**OHIO HISTORICAL SOCIETY, Appellant,**

v.

**GENERAL MAINTENANCE AND ENGINEERING COMPANY et al., Appellee.**

[Cite as *Ohio Historical Society v. General Maintenance & Engineering Co.* (1989), 65 Ohio App.3d 139.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–104.

Decided Oct. 24, 1989.

---

*Fred J. Milligan, Jr.,* for appellant.

*Szolosi & Fitch, Stephen C. Fitch* and *Guy R. Humphrey,* for appellee General Maintenance and Engineering Company.

*McNamara & McNamara* and *John L. Miller,* for appellee Manville Sales Corporation.

McCORMAC, Presiding Judge.

Plaintiff-appellant, Ohio Historical Society ("OHS"), appeals from the judgment of the trial court for defendant-appellee, separate-appellant, General Maintenance and Engineering Company ("General Maintenance"), as well as the trial court's dismissal of appellant's claims against defendant-appellee, separate-appellee, Manville Sales Corporation ("Manville"). This litigation was initially commenced by OHS against General Maintenance. Subsequently, OHS amended its complaint to include Manville, the system manufacturer. In turn, General Maintenance filed a cross-claim against Manville. After amendment, appellant's complaint sounded in breach of warranty and strict liability in tort.

The case was tried to the court which, at the close of the evidence, dismissed Manville from the proceeding. On December 23, 1988, findings of fact and conclusions of law were filed by the court granting a verdict for General Maintenance and dismissing its counterclaim against Manville.

OHS raises the following assignments of error:

"1. The trial court erred in holding that defendant General Maintenance and Engineering was not responsible under Paragraph 10.4 of its contract for defective or faulty work discovered after the expiration of the one year correction of work and guaranty clauses in its contract.

"2. The trial court's decision that the failure of the roof was not due to defendant General Maintenance and Engineering's defective or faulty work was contrary to law and the manifest weight of the evidence.

"3. The trial court erred in holding that plaintiff was not entitled to judgment against defendant General Maintenance and Engineering as a result of defendant's breach of its contract to arrange for inspections by the manufacturer and to provide a manufacturer's warranty.

"4. The trial court erred in holding that plaintiff was not entitled to judgment against defendant General Maintenance and Engineering in tort based on breach of its duty to perform its construction services in a workmanlike manner."

General Maintenance has filed a separate appeal against Manville and advances the following assignment of error:

"In The Event This Court Reverses The Judgment Of The Trial Court On Any OHS Claim Against GENERAL MAINTENANCE, Should The Court Reverse The Judgment Against GENERAL MAINTENANCE On Its Cross-Claim?"

During the summer months of 1983, General Maintenance performed repairs to a four-foot ledge area of the Ohio Historical Center, a facility owned and operated by OHS. The repairs consisted of installing an elastomeric membrane ("EPDM") roof to the ledge area in question. Installation of an EPDM roof involves affixing a rubberlike membrane to insulation board laid over the existing concrete surface. The membrane is attached at all elevation changes by the use of wooden nailers, which are then covered by flashing. The seams and flashing are sealed by the use of lap cement and a waterproof caulking. When completed, the total system is intended to provide a watertight covering in order to keep moisture from attacking the structural integrity of the underlying concrete surface.

Prior to the bidding process, plans and specifications were prepared by Dellas Harder, an architect and facilities manager for OHS. General Maintenance was the low bidder and, on February 19, 1983, the plans and specifications were incorporated into a written contract between the two parties. Article 10.4 of the standard AIA agreement executed by the parties provided a general warranty that all materials and workmanship be of good quality and free of defects. Section 2.03 of the supplemental general conditions contained

in the plans and specifications added a second guarantee clause to the contract. That section reads:

"The Contractor shall guarantee his workmanship and materials for a period of one (1) year from the date of acceptance by the Architect, and shall leave the work in perfect order at completion. Should defects develop, within the guaranteed period, the Contractor shall, upon written notice of same, remedy the defects and reimburse The Ohio Historical Society for all damage to the other work whether caused by the defects or the work correcting same. The Performance Bond furnished by the Contractor as part of this Contract shall remain in effect until the expiration of the guarantee period as assurance of the Contractor's obligation to meet the guarantee herein stipulated. Guarantees, if any, extending beyond said one (1) year period shall be specifically provided for in the contract and may be fulfilled by assignment of the bond or written warranty of the manufacturer."

The specifications went on to require that General Maintenance purchase the manufacturer's standard twenty-year warranty covering the membrane only. The original systems manufacturer requested by OHS was changed to Manville Sales Corporation at the suggestion of General Maintenance. In January 1987, OHS first discovered that the EPDM system had failed, allowing water to penetrate into the underlying insulation board. The evidence shows that the seams of the membrane sheets had separated on over sixty percent of the ledge roof surface.

■ In its first assignment of error, OHS argues that the trial court erred in holding that the contract created an exclusive one-year limitation period thereby precluding its claims against General Maintenance. Article 10.4 of the contract provides:

"The Contractor warrants to the Owner and the Architect that all materials and equipment incorporated in the Work will be new unless otherwise specified, and that all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not conforming to these requirements may be considered defective."

At issue is whether section 2.03 of the contract specifications effectively limits General Maintenance's warranty liability under Article 10.4 to one year.

Section 2.03 contains no language expressly limiting OHS from claiming damages under any other warranty provision in the contract, nor is there language indicating that section 2.03 is to be OHS' exclusive remedy for defective workmanship or materials. General Maintenance contends that the last sentence of the cited section should be read as a limitation provision. However, that sentence expressly states that this section is to be construed as

exclusive only if there are no other warranty provisions in the contract. In the documents at issue, there are two other warranty clauses: Article 10.4, which provides a general warranty limited only by the applicable statute of limitations; and a specific requirement that General Maintenance purchase a warranty from the membrane manufacturer. Therefore, section 2.03 is an additional but not an exclusive remedy. The trial court erred in holding otherwise.

In *First National Bank of Akron v. Cann* (N.D.Ohio 1980), 503 F.Supp. 419, the District Court for the Northern District of Ohio was presented with a similar situation. In holding that plaintiff's claims were not barred by the one-year period, the court reasoned that the one-year provision established a right in the contractor to rectify any defects within one year of completion and a corresponding duty of the owner to allow the contractor to correct the defects before instituting alternative remedies. This same conclusion has been reached by other courts. *All Seasons Water Users Assn., Inc. v. Northern Improvement Co.* (N.D.1987), 399 N.W.2d 278; *Omaha Home for Boys v. Stitt Constr. Co.* (1976), 195 Neb. 422, 238 N.W.2d 470; *Bd. of Regents v. Wilson* (1975), 27 Ill.App.3d 26, 326 N.E.2d 216.

Contract documents should be construed in their entirety to give effect to the intention of the parties. *Skivolocki v. East Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374. It must be assumed that each provision of a contract is inserted for a purpose. To hold, as General Maintenance argues, that the one-year warranty is exclusive would render the other warranty provisions of the contract meaningless. However, if the one-year provision is construed to be an additional remedy, the entire contract can be read in harmony.

Appellant's first assignment of error is sustained.

By its second assignment of error, OHS contends that the trial court erred in finding that OHS had failed to establish the existence of a defect attributable to General Maintenance's faulty workmanship or materials. In order to prevail on this issue, OHS must prove, within a reasonable degree of probability, that any claimed act or failure to act on the part of General Maintenance caused the roofing system to fail. The law deals in probabilities, not possibilities. *Burens v. Indus. Comm.* (1955), 162 Ohio St. 549, 55 O.O. 436, 124 N.E.2d 724. The trial court found that OHS' evidence failed to establish the probable cause of the failure because appellant's expert witness testified that there were three possible causes without identifying which cause was the probable cause.

Karl Kuhn, called as a roofing expert by OHS, testified that the roof's failure was due to the separation of the flashing from the membrane at the

points where the perimeter bars were installed. When questioned about why the flashing had separated, he described three alternatives: the subsurface was improperly prepared prior to applying the adhesive; the adhesive was improperly mixed; or the adhesive itself was defectively manufactured.

Kuhn further testified that, when he inspected the roof, the adhesive peeled off the membrane relatively easy, indicative of improper subsurface preparation. He also stated that there was evidence of improper application of the adhesive.

General Maintenance successfully argued to the trial court that, by advancing three possible alternatives, OHS' expert had failed to testify to a reasonable degree of probability that General Maintenance's conduct caused the defective condition. However, as we discussed in assignment of error number one, General Maintenance had a duty to install the EPDM system free of defects in workmanship or materials pursuant to an express warranty. Each of the reasons for the system's failure advanced by OHS' expert falls within General Maintenance's duty under the warranty.

Had any one of the three alternatives not been covered under the Article 10.4 warranty, it would have been necessary for OHS to be more specific in its proof. As it was, OHS showed with the requisite probability that the seams failed as a result of one or more of three defects, all of which were covered by the warranty of General Maintenance. The trial court erred in holding that appellant failed to prove causation.

Appellant's second assignment of error is sustained.

Appellant thirdly contends that the trial court erred in holding that OHS was not entitled to judgment against General Maintenance for the contractor's failure to provide a manufacturer's warranty. The contract specifications provide that General Maintenance was required to furnish the membrane manufacturer's standard twenty-year warranty covering the membrane only. In order to obtain the requisite warranty, General Maintenance had to arrange site inspections before, during, and after completion of the work with Manville, the membrane manufacturer. If Manville concluded that the installation was done according to the recommended procedures, for a fee Manville would issue a warranty.

It is undisputed that General Maintenance failed to schedule the inspections and, hence, never obtained the warranty. Clearly, there was a breach of this provision of the contract. However, to be actionable, General Maintenance's breach must have proximately caused OHS' damages. Those damages could be based on the fact that the warranty would have covered the failure that caused the leakage, or upon the fact that the required inspections would have disclosed that the installation was not being done properly.

The evidence indicated that there are several types of warranty available from all EPDM manufacturers. Some cover the membrane sheeting only and others cover the entire system, including caulking and lap cement. OHS argues that it was its intent to require General Maintenance to provide a warranty covering the entire system. General Maintenance contends that the contract called for a warranty extending to the membrane sheeting alone. The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law. Once ambiguity is determined, the meaning of the words used becomes one of fact. *Amstutz v. Prudential Ins. Co.* (1940), 136 Ohio St. 404, 16 O.O. 572, 26 N.E.2d 454; *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146.

Generally, contract terms are to be given their ordinary meaning. *Olmstead v. Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 51 O.O.2d 285, 259 N.E.2d 123. When the terms of the contract are clear on their face, the court has no need to construe the evidence otherwise. *Alexander, supra.* Parol evidence is admissible only if the terms of the contract are ambiguous and then only to interpret, but not to contradict, the express language. *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393; *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271.

The contract herein called for a warranty covering the "membrane only." The contract then went on to define membrane separately from the other elements of the total system. At no point does the contract define membrane to encompass the entire EPDM system. The express language appears clear and unambiguous in calling for a warranty covering the membrane sheeting alone and not the total system.

It appears from the trial court's findings of fact and conclusions of law that it felt there was ambiguity in the contract and, thus, it allowed the admission of parol evidence. The parol evidence was conflicting and there was sufficient evidence to support the trial court's factual finding that the warranty was intended to cover the membrane only.

Dellas Harder, the contract's author, testified that he knew the difference between membrane and a membrane system. He further testified that it was his intent to obtain a total system warranty. David Sheirer, a Manville sales representative, testified that he would interpret the contract to call for a membrane only warranty and that Manville did not issue a twenty-year system guarantee in 1983. Norman Hilling, the president of General Maintenance, also testified that he interpreted the contract to call for a membrane only warranty.

The meaning of terms used in a contract, if ambiguous, is a question of fact and will not be overturned on appeal absent a showing that the trial court abused its discretion. *Alexander, supra; C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

However, the trial court failed to address the issue of whether the failure to provide the inspections which were part of the warranty process was a proximate cause of the damages. Once OHS proved that the inspections were not made, a prima facie case was established sufficient to allow recovery of damages for the defective roof. The burden was upon General Maintenance to prove that the required inspections would not have resulted in a discovery of the problem and correction of it. No such proof was offered.

Appellant's third assignment of error is sustained.

In its final assignment of error, OHS argues that the trial court erred in holding that OHS was not entitled to judgment against General Maintenance in tort based on its duty to perform in a workmanlike manner.

The duty to perform construction services in a workmanlike manner sounds in tort and is implied by law. *Barton v. Ellis* (1986), 34 Ohio App.3d 251, 518 N.E.2d 18. In order to prevail, OHS must establish that General Maintenance was negligent in that it failed to use ordinary care. *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147. Merely proving the existence of a defect is insufficient without showing that the defect resulted from the contractor's failure to use ordinary care.

OHS presented sufficient evidence to show that a defect in the EPDM system existed. However, as the trial court found, OHS solicited no expert testimony concerning the standard of ordinary care to be used in this type of construction. Without showing that General Maintenance did not use ordinary care, OHS has failed to show that General Maintenance was negligent.

Appellant's fourth assignment of error is overruled.

In its separate appeal, General Maintenance conditionally asserts that, if this court reverses the judgment of the trial court, we must reinstate its cross-claim against separate-appellee, Manville Sales Corporation. General Maintenance's cross-claim sought judgment for indemnity against Manville in the event that judgment was rendered against General Maintenance. Since no such judgment was rendered, the cross-claim was dismissed by the trial court.

As a result of the dismissal, there was no evidence adduced or hearing conducted regarding the cross-claim. The trial court, as part of the dismissal, specifically agreed to allow General Maintenance to preserve its right to present evidence against Manville on its indemnity claim. Since General

Maintenance did not pursue its action against Manville but, rather, reserved its rights pending the ultimate resolution of OHS' claims, the issue of indemnity is still pending and may be pursued at an appropriate time.

Separate-appellant General Maintenance's assignment of error is sustained.

Appellant's first, second, and third assignments of error are sustained. Appellant's fourth assignment of error is overruled. Separate-appellant General Maintenance's assignment of error is sustained. The judgment of the trial court is reversed and the case is remanded to the trial court for further procedure consistent with this opinion.

*Judgment reversed
and case remanded.*

WHITESIDE and JOHN C. YOUNG, JJ., concur.