DECISION.
I. Statement of Facts
Defendant-appellant/cross-appellee, Flanco Realty, Inc. ("Flanco"), appeals the judgment of the Hamilton County Court of Common Pleas granting the motions for distribution filed by defendant-appellee/cross-appellant, Adeeb Sons, Inc. ("Adeeb"), and defendant-appellee, the Hamilton County Treasurer ("treasurer") in an eminent-domain action. In addition, Adeeb appeals that portion of the trial court's judgment denying its motion for post-judgment interest. For the following reasons, we affirm the trial court's judgment[1] in its entirety.
In 1997, plaintiff, the Board of Commissioners of Hamilton County, filed an appropriation action to acquire real property on the Cincinnati riverfront owned by Flanco. At the time of the appropriation action, a portion of the real estate was leased by Adeeb. Adeeb was operating a Skyline Chili franchise at that location.
The appropriation case proceeded to trial in December 1997. The jury returned a verdict of $2.1 million, an amount that is not contested on appeal That sum was deposited with the clerk of courts.
The treasurer filed a motion for the distribution of a sum representing the amount of the real estate taxes owed on the property. The trial court granted that motion in an entry journalized on September 9, 1998.
Adeeb filed a motion for distribution of a portion of the fund based upon the language of its lease with Flanco. Adeeb sought compensation for the loss of value of the restaurant business as well as for relocation expenses. Flanco opposed Adeeb's motion, contending that the lease did not give Adeeb the right to recover from the appropriation proceeds.
The trial court ruled that the language of the lease as it pertained to Adeeb's right to recover from the appropriation proceeds was ambiguous and ordered that a trial be conducted on the issue of the parties' intent at the time the lease was drafted and the issue of damages if the lease was found to contemplate compensation to Adeeb. That trial was held in July 1998.
Following the first phase of the trial, the court held that the language of the lease was intended to allow Adeeb to collect from the proceeds of the appropriation for damage to business value and for relocation expenses. The second phase of the trial, concerning damages, was then conducted. At the close of all evidence, the trial court ordered that the sum of $169,292.50 be distributed to Adeeb.
II. Flanco's Assignments of Error
In its first assignment of error, Flanco contends that the trial court erred in granting the treasurer's motion for distribution. Flanco argues that the treasurer's failure to serve a copy of its answer on Flanco acted as a waiver of any claim against the appropriation proceeds. This argument is not well taken.
As the treasurer aptly notes, the lien on taxes that accrue on real property arises by operation of law on the first day of January of each year and continues until the taxes and any applicable interest, penalties, or other charges are paid.[2]
Further, any taxes that have accrued are to be paid at the date of transfer of the property.[3] Thus, it is beyond dispute that the treasurer possessed a valid lien in the case at bar and that the lien arose by operation of law.
Flanco, however, attempts to distinguish between the existence of the lien and execution of the lien and posits that service of the treasurer's answer was a necessary prerequisite to its right to share in the appropriation proceeds. We are not persuaded. It is beyond dispute that Flanco was put on notice of the existence of the tax liability in the case at bar. Flanco has not asserted any possible defense to the execution of the tax lien and has not even alleged any prejudice resulting from the failure of service. Indeed, as the treasurer observes, its answer consists merely of three paragraphs in which it is averred that the lien exists. Under these circumstances, we refuse to deprive the public of properly accrued revenue, and we accordingly overrule the first assignment of error.
In its second assignment of error, Flanco claims that the trial court erred in holding that the lease was ambiguous and in ordering the presentation of testimony to determine the parties' intent.[4] The issue raised below with respect to the lease was whether Adeeb was entitled to a share of the appropriation proceeds to compensate it for relocation expenses and the loss of business value resulting from the closing of the Skyline restaurant. The relevant portion of the lease, which Flanco drafted, is as follows:
 In the event of any condemnation or taking herein before mentioned of all or part of the building, the Lessor shall be entitled to receive the entire award in the condemnation proceeding, including any award made for the value of the Lease estate vested by this Lease, but excluding any award for damage to business value or relocation expense payable to Lessee.
Courts generally presume that "the intent of the parties to a contract resides in the language they chose to employ in the agreement."[5] Therefore, parol evidence is admissible to ascertain the parties' intent only "where contractual terms are undefined, uncertain or ambiguous and are reasonably susceptible to more than one interpretation."[6] In defining ambiguity, the Supreme Court of Ohio has stated that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."[7]
Issues involving the construction of written contracts, including the question of whether a contract is ambiguous, are questions of law and are therefore reviewed de novo by this court.[8]
In the case at bar, we find no error in the trial court's holding that the lease was ambiguous. The relevant clause of the lease begins by stating that the lessor is entitled to the entire award in the event of an appropriation. Then, at the end of the clause, there is an exception for any award for loss of business value or relocation expenses. As the trial court noted, however, under Ohio law there is generally no provision for the payment of relocation expenses or lost business value in an appropriation action; the only elements of compensation are for the value of the land and for any damage to the residue, both of which are paid to the owner of the real property.[9] As a result, there could never be "any award" from a jury in an eminent-domain action for a lessee's relocation expenses or loss of business value.[10]
Thus, the lease, as written, would arguably create an unenforceable provision and result in an absurdity, in that it would entitle the lessee to an award of nothing.
Faced with this potential absurdity, Flanco argues that the clause merely allows Adeeb to assert any independent claim against the appropriating authority that it may have, and prevents Flanco from interfering with Adeeb's pursuit of an independent remedy. We find this unpersuasive for two reasons.
First, Flanco does not suggest what right it would otherwise have to interfere with Adeeb's pursuit of an independent remedy against the appropriating authority or what claim it might have against funds recovered in such an independent action. Thus, Flanco's construction of the lease term would once again render the term mere surplusage at best and would therefore contravene a cardinal rule of contractual construction that the parties intend to create enforceable obligations and that all terms are to be given some effect.[11]
Second, while there is a limited right of recovery for relocation expenses from the appropriating authority under R.C. Chapter 163, there is no concomitant remedy to recover the loss of business value under Ohio law. Therefore, Flanco's interpretation of the lease would create at best an illusory remedy for Adeeb to pursue. Moreover, the grouping of relocation expenses in the lease with business-loss compensation suggests that they are to come from the same source, an impossibility under Flanco's construction of the lease.
Given the lease's lack of clarity concerning Adeeb's right to recover from the appropriation award, we find no error in the trial court's finding that the lease was ambiguous or in its order that a trial be held on the issue of the parties' intent. We now turn to the question of whether the trial court's holding that Adeeb was entitled to recover from the appropriation proceeds was proper in light of the evidence adduced at trial.[12]
While the determination of whether the terms of a contract are ambiguous is a question of law, where the parties introduce conflicting evidence as to the meaning of ambiguous terms, their intended meaning is a question of fact.[13] As a reviewing court, we are necessarily constrained by the principle that "[j]udgments supported by competent, credible evidence going to all the material elements of the case will not be reversed as being against the manifest weight of the evidence."[14]
In the case at bar, the trial court's finding that the parties intended to permit Adeeb to recover from the appropriation proceeds was supported by competent, credible evidence. Witnesses for Adeeb testified that, during negotiations, Adeeb's right to protect itself against possible losses from eminent domain was a key concern. Adeeb's witnesses stated that, given the amount of capital improvements needed to make the building suitable for a restaurant and given the amount expended on franchise fees and other costs, Adeeb would not have entered into the lease absent an assurance that it could recoup its losses directly from the appropriation proceeds. Although Flanco presented evidence that the parties intended the clause to be a standard eminent-domain clause, pursuant to which the lessee would not be entitled to share in the appropriation proceeds, it was within the province of the trial court to deem Adeeb's evidence more persuasive.[15]
We find no error in the trial court's finding, and we accordingly overrule the second assignment of error.
In its third assignment of error, Flanco argues that the trial court erred in interpreting the terms of the lease in accordance with the unexpressed intentions of Adeeb. Flanco argues, in essence, that the court received and relied upon improper parol evidence, in that the intentions expressed by Adeeb's witnesses at trial had not been communicated to Flanco at the time the contract negotiations were occurring. Flanco cites two cases for the proposition that such uncommunicated intentions are not admissible.[16]
Assuming, without deciding, that the cases cited by Flanco support its legal position, we hold that Flanco's argument is not supported by the record in the instant case. Flanco contends that Adeeb's concerns that it be able to recover from the appropriation proceeds were not disclosed at the time the lease was negotiated. However, representatives of Adeeb testified that its concerns and intentions were made explicit during verbal negotiations. Further, the court received into evidence a letter written at the time of negotiations in which Adeeb expressed those concerns.
Although Flanco presented evidence tending to rebut Adeeb's assertions that its concerns about eminent domain had been expressed, it was certainly within the discretion of the trial court to believe Adeeb's evidence and to disbelieve the evidence offered by Flanco.[17] In light of the testimony and the documentary evidence offered by Adeeb, we find no error in the trial court's receipt of the parol evidence in question. Flanco's third assignment of error is therefore overruled.
In the fourth assignment of error, Flanco contends that the trial court erred in awarding relocation expenses to Adeeb. Flanco argues that, even if the lease was properly construed to provide for relocation expenses, the evidence adduced at trial indicated that Adeeb's business was closed rather than relocated, thus rendering that element of damages improper. Adeeb contends that the contractual language, set forth above, does not limit recovery to expenses relating to the relocation of the business as a whole, but rather provides for the expenses of relocating the fixtures and other assets of the business even if it were to cease operating as an independent restaurant.
We agree with Adeeb. As Adeeb correctly argues, the contract does not specifically limit recovery to "business relocation expense" but provides generally for "relocation expense." If, as Flanco contends, the parties intended to refer only to "business relocation expense," Flanco could have explicitly included such a limitation when it drafted the lease. Bearing in mind that a contract must be construed against the party who drafted it,[18] we hold that the trial court properly ordered Flanco to pay Adeeb for the costs of relocating the equipment. The sum awarded by the trial court was supported by competent, credible evidence, and we therefore find no error in the court's decision. The fourth assignment of error is overruled.
In its fifth and final assignment of error, Flanco maintains that the trial court erred in admitting testimony concerning planned improvements in the Skyline restaurant for the purpose of assigning a value to the business. Specifically, Flanco objects to the testimony of accountant Brad East, who stated that changes in operations would have allowed the restaurant to be profitable in the future, even though in the past it had shown losses or negligible profits.[19]
We first note that it is within the discretion of the trial court to admit or exclude expert testimony pursuant to Evid. R.702, and that rulings on such matters will not be reversed absent an abuse of that discretion.[20] The term "abuse of discretion" means more than a mere error of law or judgment; it implies that the court's decision was unreasonable, arbitrary, or unconscionable.[21]
In the case at bar, we find no abuse of discretion. In support of its assignment of error, Flanco cites a number of cases in which courts have held that future profits are generally not recoverable as an element of damages because they are too speculative.[22] However, as Adeeb contends, future profits were not claimed as damages in the instant case but were projected as a means of ascertaining the value of the business. Thus, the cases cited by Flanco do not require the exclusion of the evidence at issue. East testified that the projection of future profits was one of the accepted methods of determining the value of a business, and the expert who testified for Flanco confirmed that assertion.
Flanco argues, however, that even if evidence of future profits were not admitted as an element of damages, the projection formulated by East was too speculative to form the basis of a proper valuation of the restaurant. We are not persuaded. East testified as to operational changes that could have been readily implemented to make the restaurant profitable and further testified that those changes were in fact planned at the time the appropriation action was filed. East based his assertions on his extensive experience in appraising fast-food restaurants and his knowledge of the efficacy of similar operational improvements in the industry.
Although we are mindful of Flanco's argument that such changes could have been implemented in the past to make the restaurant more profitable, thus casting doubt upon East's estimate of the value of the changes, we hold that this argument goes to the weight of the evidence and not its admissibility. In any event, we cannot state that the trial court was unreasonable, arbitrary, or unconscionable in considering the evidence. Therefore, the fifth assignment of error is overruled.
III. Adeeb's Cross-Appeal
In its sole assignment of error, Adeeb claims that the trial court erred in refusing to order the payment of post-judgment interest on the amount of its distribution. R.C. 1343.03, governing post-judgment interest, provides the following:
 * * * [W]hen money becomes due and payable * * * upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten percent per annum * * *.
Adeeb argues that this statutory language requires an award of post-judgment interest in the case at bar.
We disagree. As Flanco properly notes, this case, while involving the terms of a written lease, does not fall squarely within the terms of R.C. 1343.03. The proceeds that were the subject of the instant litigation arose out of an appropriation action, a special statutory proceeding. Thus, it cannot be said that this was strictly an action in contract such that R.C.1343.03 would apply. This construction is further confirmed by the fact that the proceeds in this case were in the possession of the clerk of courts. Thus, the policy of awarding interest to prevent dilatory tactics on the part of the person liable for payment was simply not implicated in the case at bar; only the court and the clerk of courts could provide for the payment of the sum. Finally, the proceeds in the instant case bore interest from the time they were deposited with the clerk of courts, and Adeeb was awarded a pro rata share of that interest in the order of distribution. For these reasons, we find no error in the trial court's failure to provide for post-judgment interest pursuant to R.C. 1343.03. Adeeb's sole assignment of error is therefore overruled.
IV. Conclusion
Having overruled each of Flanco's assignments of error and Adeeb's sole assignment of error in the cross-appeal, we hereby affirm the judgment of the trial court in its entirety.
Judgment affirmed.
 Gorman, J., concurs.
Doan, P.J., concurs in judgment only.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] The decisions that are the subject of the instant appeals were actually contained in two separate judgment entries. However, because the appeals have been consolidated, we refer to the entries as a single judgment.
[2] R.C. 323.11.
[3] R.C. 319.201.
[4] Flanco phrases this assignment in terms of the trial court denying its motion for partial summary judgment. The record, however, discloses that Flanco did not file a summary-judgment motion. Nonetheless, as we discuss infra, our review of the trial court's finding that the lease was ambiguous is de novo.
[5] See Shifrin v. Forest City Enterprises, Inc. (1992),64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501.
[6] See Joseph v. Dever (Aug. 20, 1986), Hamilton App. No. C-840628, unreported.
[7] Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,374 N.E.2d 146, paragraph two of the syllabus.
[8] See The Long Beach Assoc., Inc. v. Jones (1998), 82 Ohio St.3d 574,576, 697 N.E.2d 208, 209; Ohio Historical Society v.General Maintenance Engineering Co. (1989), 65 Ohio App.3d 139,146, 583 N.E.2d 340, 344.
[9] See, generally, Wray v. Parsson (1995), 101 Ohio App.3d 514,520, 655 N.E.2d 1365, 1369.
[10] Of course, the parties could nonetheless contract to divide the proceeds following the jury award, as Adeeb contends that the parties did in the case at bar.
[11] See Ford Motor Co. v. John L. Frazier and Sons (1964),8 Ohio App.2d 158, 161, 196 N.E.2d 335, 337; Heifner v. Swaney (Aug. 17, 1992), Allen App. No. 1-91-82, unreported.
[12] Although Flanco does not state in a separate assignment of error that the trial court's decision was contrary to the manifest weight of the evidence, its arguments under the second assignment of error do raise the issue.
[13] See Amstutz v. Prudential Ins. Co. (1940), 136 Ohio St. 404,26 N.E.2d 454; Ohio Historical Society, supra, at 147,583 N.E.2d at 345.
[14] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[15] See Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273.
[16] See Aultman Hosp. Assoc. v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 544 N.E.2d 920; Myers v. SunlightLaundry Co. (1918), 10 Ohio App. 275.
[17] See Seasons Coal Co., supra.
[18] Central Realty Co. v. Clutter (1980), 62 Ohio St.2d 411,413, 406 N.E.2d 515, 517.
[19] The parties presented conflicting evidence about the restaurant's past performance. Flanco's expert testified that the business lost money in every year of its operation, while East's accounting method reflected slight losses for some years and small profits for others.
[20] Burke v. Gammarino (1995), 108 Ohio App.3d 138, 145,670 N.E.2d 295, 299.
[21] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1142.
[22] See, e.g., Charles R. Combs Trucking, Inc. v.International Harvester Co. (1984), 12 Ohio St.3d 241,466 N.E.2d 883, paragraph two of the syllabus; Gahanna v. EastgateProperties, Inc. (1988), 36 Ohio St.3d 65, 521 N.E.2d 814, syllabus.