DECISION.
{¶ 1} Defendant-appellant/cross-appellee, Air/Pro, Inc., appeals from the judgment of the trial court in favor of its former employee, plaintiff-appellee/cross-appellant, Roger W. Ruehl, on Ruehl's complaint for sales commissions and on Air/Pro's counterclaim for breach of contract. In two assignments of error, Air/Pro argues that the trial court erred by awarding commissions to Ruehl, and by finding that Ruehl had not violated a noncompetition provision of his employment agreement. In his cross-appeal, Ruehl argues that the trial court erred by failing to award him a greater amount of sales commissions. We affirm the judgment of the trial court.
 Ruehl's Employment History {¶ 2} In 1974, Ruehl began working as a salesman for Air/Pro, a company that sold industrial air supplies and air-moving equipment. In 1977, Ruehl entered into an employment agreement with Air/Pro. The agreement set forth Ruehl's commission rates and benefits, as well as a provision prohibiting Ruehl from competing with Air/Pro if he were to leave the company. In 1990, Ruehl and Air/Pro entered into a modification of the 1977 employment agreement. Under the modification, Ruehl was authorized to operate his own company, Air Custom Services, to provide ancillary products and services to Air/Pro customers. Ruehl agreed that the total annual invoices for Air Custom would not exceed $5,000 and that he would submit Air Custom's business records to J.A. Altherr, president of Air/Pro, on a yearly basis.
 {¶ 3} Beginning in the mid-1990s, the relationship between Ruehl and Altherr began to sour as a result of Ruehl's exceeding the $5,000 cap on Air Custom invoices and of Altherr's refusal to raise the cap. By July 2001, Ruehl's employment with Air/Pro was terminated.
 Ruehl's Previously Earned Commissions {¶ 4} In its first assignment of error, Air/Pro argues that the trial court erred by awarding commissions to Ruehl where the 1977 employment agreement provided for the forfeiture of accrued commissions upon Ruehl's termination. As we review the employment agreement, our role is to give effect to the intentions of the parties.[1] Where the language of a contract is clear and unambiguous, its interpretation is a matter of law, and our review of the contract is de novo.[2] But where a contract is ambiguous, the meaning of its terms raises questions of fact, and the trial court's interpretation should not be overturned on appeal absent a showing that the court abused its discretion.[3]
 {¶ 5} "A contract is ambiguous if its terms cannot be clearly determined from a reading of the entire contract or if its terms are susceptible to more than one reasonable interpretation."[4] If a contract is ambiguous, courts may resort to extrinsic evidence concerning the parties' intent.[5]
 {¶ 6} As a basis for its argument that Ruehl had forfeited his commissions, Air/Pro relies on section 5 of the agreement, which provided the following:
 {¶ 7} "5. * * * Should The Salesman's termination by The Company be due to his identification with or interest in any other business endeavor while he is employed by The Company, and without the express written consent of an executive officer of The Company, he may forfeit all orpart of his accrued commissions to The Company." [Emphasis added.]
 {¶ 8} The trial court found that Ruehl had been terminated by Air/Pro due to his interest in Air Custom, and that he had exceeded Air/Pro's written consent to operate Air Custom. Accordingly, the court concluded, Ruehl's breach of the agreement triggered the forfeited-commissions provision. But the trial court distinguished Ruehl's "accrued commissions" from his previously earned commissions. As a result, the court found that Ruehl had forfeited tens of thousands of dollars in accrued commissions, but that Ruehl had not forfeited $12,646.57 in previously earned commissions.
 {¶ 9} We agree with the trial court's conclusion with respect to the forfeited commissions. The agreement's provision that a salesman "may" forfeit "all or part of" his commissions is ambiguous on its face because one cannot tell with certainty whether upon termination a salesman would definitely lose his commissions, or what portion, if any, would be lost. Because the provision was susceptible to more than one reasonable interpretation, the court was entitled to resort to extrinsic evidence to determine its meaning.[6]
 {¶ 10} The agreement incorporated two exhibits, A and B, which provided for payment of commissions in two different ways. Exhibit A provided for a salesman's commissions in cases where Air/Pro had received payment for sales orders. Under Exhibit A, a salesman would receive his commission payment in the month following Air/Pro's receipt of payment on the order. So according to Exhibit A, Ruehl was entitled to the commissions he had earned on sales orders for which Air/Pro had already received payment. On the other hand, Exhibit B provided for the payment of commissions on a sliding scale according to the status of orders that had not been completely consummated at the time of a salesman's termination.
 {¶ 11} Following its determination that Ruehl was owed the previously earned commissions, the trial court found that the amount Air/Pro owed Ruehl was $12,646.57. The court based this amount upon an internal Air/Pro report for July 2001. At the end of each month, Air/Pro generated two different reports, one for a salesman's commissions that had been earned following Air/Pro's receipt of payment on orders and one for a salesman's commissions that had accrued for orders that had not yet been paid. In this case, the earned-commissions report for July 2001 showed that Ruehl was owed $12,646.57 for those orders where Air/Pro had previously received payment. At trial, Altherr conceded that Ruehl would have been paid that amount for his July 2001 paycheck. But he admitted that he had instructed an independent payroll company to stop payment on Ruehl's monthly paycheck.
 {¶ 12} We cannot say that the trial court abused its discretion in determining that, under the agreement, "accrued commissions" were distinguishable from earned commissions under the contract.[7] On the basis of the evidence, the court was entitled to find that the parties' intention with respect to Ruehl's commissions was that he would not lose commissions on orders that had been paid, but that he would lose commissions on orders where payment had not been received. We cannot reverse the trial court's judgment as to the amount awarded for commissions owed Ruehl, because the judgment was supported by competent, credible evidence.[8]
 {¶ 13} Therefore, we hold that the trial court did not err in awarding Ruehl the amount of his previously earned commissions. We overrule Air/Pro's first assignment of error.
 Air/Pro's Counterclaim {¶ 14} In its second assignment of error, Air/Pro argues that the trial court erred by finding for Ruehl on its counterclaim for Ruehl's breach of the noncompetition provision of the 1977 employment agreement. That provision read as follows:
 {¶ 15} "6. It is agreed that for a period of one year after the termination of The Salesman's employment with The Company, he will not directly or indirectly on behalf of himself or any other person, firm, or corporation represent any of The Company's existing Principals. This same condition applies to former Principals that The Company has represented within one year prior to The Salesman's termination. It is understood and agreed that The Company's Principals include all those factories whose products The Company has been selling whether or not a representative contract exists or existed between The Company and each of those Principals. Exceptions to this may be made only by express written consent of an executive officer of The Company."
 {¶ 16} The language of the provision indicated that Ruehl would not "represent" any of Air/Pro's principals for one year following his termination. But the term "represent" was not defined in the provision. Ruehl testified that his understanding that the term did not include the buy-resale arrangements in which he had engaged arose from the Revised Code. R.C. 1335.11(A)(3) defines a sales representative as one who is not compensated by commission and who may engage in buy-resale arrangements:
 {¶ 17} "`Sales representative' means a person who contracts with a principal to solicit orders for a product or orders for the provision of services and who is compensated, in whole or in part, by commission, butdoes not include a person who places orders for or purchases the productfor that person's own account for resale or places orders for theprovision of or purchases services for that person's own account, a person who is an employee of a principal, or a person who contracts with a principal to solicit within this state orders for a product or orders for the performance of services and who is not compensated, in whole or inpart, by commission." [Emphasis added.]
 {¶ 18} Relying on the portion of the provision that stated that Ruehl would not "directly or indirectly on behalf of himself or any other person, firm, or corporation represent any of The Company's existing Principals [emphasis added]," Altherr testified that his understanding of the provision was that Ruehl could not sell the same brands that Air/Pro had been selling. Altherr's understanding of the term "represent" therefore encompassed even a buy/resale arrangement.
 {¶ 19} As the trial court recognized, however, the term "represent" as used in the noncompetition provision was susceptible to more than one reasonable interpretation. So the trial court was entitled to consider extrinsic evidence to determine the parties' intention as to the meaning of the term.[9]
 {¶ 20} At trial, the evidence demonstrated that at the time the parties entered into the employment agreement in 1977, Air/Pro operated as a manufacturer's representative. Air/Pro provided and solicited equipment on behalf of its principals, for which Air/Pro was paid commissions by the principals. In turn, Air/Pro's salesmen were paid percentages of the commissions received from the principals. Over the years, Air/Pro's business evolved to include its buying and reselling of manufacturer's products. In a buy-resale arrangement, Air/Pro marked up the price of a product and resold it. Then the salesman was paid a percentage of Air/Pro's net profit on the resale.
 {¶ 21} At trial, Ruehl testified that Altherr had circulated notices to salesmen over the years, including a notice that identified Air/Pro's principals as of May 2001. Ruehl testified that he did not attempt to contact, or try to sell products on behalf of, any principals on that list. Ruehl testified that he also did not contact those manufacturers with whom Air/Pro had a manufacturer-representative contract. Ruehl testified that, for one year following his termination, he did not work as a manufacturer's representative, but acted simply as a "design and build contractor," where he would buy and resell products and act as a problem-solving engineer.
 {¶ 22} Following our review of the record, we agree with the trial court's conclusion that "[t]he language `represent' does not include a buy-resale relationship." While the noncompetition provision prevented Ruehl from representing companies with whom Air/Pro had a manufacturer's-representative/commission relationship, the provision in no way prevented Ruehl from contacting companies that simply sold products to Air/Pro in a buy-resale relationship. Because Ruehl's post-termination efforts did not include contact with those companies with whom Air/Pro had a manufacturer's-representative/commission relationship, we cannot say that the trial court's determination in favor of Ruehl was against the weight of the evidence. We overrule Air/Pro's second assignment of error.
 Ruehl's Commissions on Uncompleted Sales {¶ 23} In his cross-appeal, Ruehl argues in a single assignment of error that the trial court's judgment was contrary to the manifest weight of the evidence to the extent that it did not award him all the commissions to which he was entitled. If the court's judgment was supported by competent, credible evidence, we cannot reverse the judgment as being against the manifest weight of the evidence.[10]
 {¶ 24} Ruehl argues that the forfeited-commissions provision in section 5 of the employment agreement had not been triggered because (1) the 1990 modification of the agreement had allowed him to operate Air Custom; and (2) he had not been fired by Air/Pro but had voluntarily resigned. Therefore, Ruehl contends, the court erred by finding that he had forfeited his commissions on sales for which Air/Pro had not received payment.
 {¶ 25} The court found that Ruehl had breached the 1990 modification in two ways: (1) Ruehl had exceeded the $5,000 cap on Air Custom invoices, and (2) Ruehl had failed to provide the required business records to Air/Pro. By breaching the modification, the court concluded, Ruehl had triggered the forfeited-commissions provision of the employment agreement because he had been terminated by Air/Pro due to his interest in another company without the express written consent of Air/Pro.
 {¶ 26} Our review of the record demonstrates that the trial court's findings were supported by the evidence. The evidence showed that Ruehl had asked Altherr to raise the $5,000 cap on Air Custom invoices, but that Altherr had refused. Altherr testified that Ruehl repeatedly had exceeded the $5,000 cap. Altherr had tired of Ruehl's excuses for the excesses. In April 2001, Altherr asked Ruehl to provide him with Air Custom's 2000 tax return. By the end of May 2001, Ruehl still had not supplied the return. In late June, Ruehl gave the return to Altherr. According to the return, Air Custom's invoices for 2000 had totaled $10,767, well over the $5,000 cap.
 {¶ 27} Altherr "hit the roof." During a meeting in July 2001, Ruehl told Altherr that he wanted to increase Air Custom's business. Ruehl said that he would consider leaving Air/Pro if Altherr did not agree to the expansion of Air Custom. Altherr told Ruehl to give him a proposal. After reviewing Ruehl's proposal, Altherr asked Ruehl for the Air Custom business records for the years 1999 through 2001. Ruehl gave Altherr the records, but had redacted from them relevant information about the business.
 {¶ 28} On July 22, 2001, Altherr wrote a note to Ruehl telling him that he needed complete records for Air Custom, and that Ruehl was to explain any missing information. On July 25, Altherr called Ruehl and told him that he was still waiting for the records. At that point, Ruehl stated that he would not turn over the records to Altherr. On July 26, Altherr called Ruehl to tell him that his job was in jeopardy and that he wanted to meet with him. When Ruehl responded that he could not meet until the following day, Altherr sent an e-mail instructing Ruehl to report to his office the following day at 3:00 p.m.
 {¶ 29} The next morning, Altherr received a message from Ruehl stating that he could not attend the meeting. Then a customer called Altherr and said that Ruehl had told him that he had been fired from Air/Pro. Following that phone conversation, Altherr had the locks changed at the Air/Pro offices to keep Ruehl out. As Altherr testified, at that point, "[Ruehl] was terminated. He's not going to work at Air/Pro at this point. He's gone." On July 31, Altherr confirmed Ruehl's termination from Air/Pro by letter.
After considering the testimony and exhibits, the trial court concluded that Ruehl had violated the terms of the modification and that he had been fired by Air/Pro, thereby triggering the forfeiture of any commissions on sales for which Air/Pro had not received payment. Because the court's judgment in this respect was supported by competent, credible evidence, we overrule Ruehl's assignment of error. We affirm the judgment of the trial court.
Judgment affirmed.
Hildebrandt, P.J., and Painter, J., concur.
[1] See Hamilton Ins. Servs. Inc. v. Nationwide Ins. Cos.,86 Ohio St.3d 270, 273, 1999-Ohio-162, 714 N.E.2d 898.
[2] See Nationwide Mut. Fire Ins. Co. v. Guman Bros.Farm,73 Ohio St.3d 107, 108, 1995-Ohio-214, 652 N.E.2d 684.
[3] See Ohio Historical Soc. v. Gen. Maintenance Eng. Co. (1989),65 Ohio App.3d 139, 146-147, 583 N.E.2d 340; Kelly Dewatering Constr. Co. v. R.E. Holland Excavating, Inc., 1st Dist. No. C-030019,2003-Ohio-5670.
[4] Kelly Dewatering Constr. Co., supra, at ¶ 21, citing UnitedStates Fid. Guar. Co. v. St. Elizabeth Med. Ctr. (1998),129 Ohio App.3d 45, 55, 716 N.E.2d 1201.
[5] State ex rel. Petro v. R.J. Reynolds Tobacco Co., 104 Ohio St.3d 559,564, 2004-Ohio-7102, 820 N.E.2d 910, at ¶ 23.
[6] See KellyDewatering Constr. Co., supra; R.J. Reynolds TobaccoCo., supra.
[7] See Ohio Historical Soc., supra.
[8] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[9] See R.J. Reynolds Tobacco Co., supra.
[10] See C.E. Morris Co., supra.