JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant, Kimberly Lisboa ("Kimberly"), appeals the trial court's granting of summary judgment in favor of plaintiff-appellee, Jose Lisboa ("Jose"). Finding no merit to the appeal, we affirm.
 {¶ 2} Jose and Kimberly were divorced in 2005. The Judgment Entry of Divorce incorporated the terms and conditions set forth in the parties' Separation and Property Settlement Agreement. As part of the property settlement, Jose and Kimberly executed a series of ancillary documents, which provided for Kimberly's purchase of Jose's interest in a number of business entities, including their primary business, Cleveland Granite Marble/ITX ("ITX").
 {¶ 3} At the time of the divorce, ITX was in the midst of a dispute with the James McHugh Construction Company ("McHugh") concerning ITX's performance under a subcontract for condominium construction in Chicago, Illinois. At the time Kimberly and Jose entered into their Separation and Property Settlement Agreement, the dispute had not been resolved. Kimberly and Jose entered into two related agreements, the Agreement Regarding the McHugh Dispute ("McHugh Agreement"), which clarified Kimberly's and Jose's financial duties pertaining to the construction project, and the "Escrow Agreement," wherein escrow agents were appointed and directed to administer financial duties relative to the McHugh Agreement. The terms of these documents were incorporated into the Separation and Property Settlement Agreement. *Page 3 
 {¶ 4} Pursuant to the McHugh Agreement, Kimberly was authorized to negotiate a settlement of the McHugh dispute. Jose agreed to indemnify, defend, and hold Kimberly and ITX harmless from one-half of all costs related to the McHugh dispute, including but not limited to settlement payments, judgments, attorney's fees, and other litigation expenses. Kimberly and Jose also agreed to share all expenses associated with the dispute including, but not limited to, settlement payments.
 {¶ 5} Under the terms of the Escrow Agreement, Kimberly and Jose agreed that Jose would place $600,000 via a letter of credit into escrow to secure Jose's one-half payment of the contingent liabilities related to the McHugh dispute. The McHugh Agreement specified that no settlement funds were to be paid by Jose until Kimberly actually paid an amount equal to the amount being paid by Jose. The Escrow Agreement further outlined that the escrow agent would pay Jose's one-half of the settlement amount after it received proof that Kimberly had paid her half.
 {¶ 6} McHugh and Kimberly, on behalf of ITX, negotiated to settle the McHugh dispute for the sum of $800,000. The parties executed the McHugh Settlement Agreement ("McHugh Settlement") in May 2006. The language of the McHugh Settlement set forth the monies McHugh was owed. McHugh had asserted numerous claims against ITX in the amount of $2,169,946. ITX's claims against McHugh totaled $1,156,718. Thus, McHugh's claims exceeded ITX's claims by $1,013,228, but that amount was reduced to $800,000 in the settlement. *Page 4 
 {¶ 7} A dispute between Kimberly and Jose arose regarding how much each was required to pay under the terms of the McHugh Agreement and the McHugh Settlement. Kimberly argued that since Jose no longer had any property rights in ITX, he could not benefit from the setoff ITX received from McHugh; thus, he owed one-half of the total claim against ITX, which she argued was $644,000. Kimberly argued that the transmittal letter that accompanied a draft of the settlement agreement sent to McHugh explained that McHugh was settling its claims for $1,288,000 and ITX was settling its claims against McHugh for $488,000, which meant that Kimberly and Jose each owed $644,000, although Kimberly would actually tender less due to the setoff.[1] Jose, on the other hand, argued that he owed one-half of the negotiated amount owed to McHugh, which was one-half of $800,000.
 {¶ 8} After the McHugh Settlement was executed, Kimberly initially tendered $155,822.50, which was the amount Kimberly stated she owed to McHugh after the setoff from the funds received from ITX's claim. Jose sought injunctive relief, and Kimberly subsequently issued a second check to McHugh so that the total amount she paid was $400,000. The escrow agent then caused $400,000 from Jose's funds to be paid to McHugh for full settlement of the McHugh dispute. Thus, the sum of all *Page 5 
funds collectively paid to McHugh by Jose and Kimberly as settlement of the McHugh dispute was $800,000.
 {¶ 9} Jose filed a motion to show cause and a motion for attorney fees, seeking enforcement of his interpretation of the agreements. He then moved for partial summary judgment. Kimberly also filed for partial summary judgment. The trial court issued a lengthy opinion in which it granted Jose's motion and denied Kimberly's motion.
 {¶ 10} Kimberly appeals the trial court's decision, raising three assignments of error for our review.
 Standard of Review {¶ 11} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if, as a matter of law, no genuine issues exist for trial. Brewer v. Cleveland Bd. of Edn. (1997),122 Ohio App.3d 378, 701 N.E.2d 1023, citing Dupler v. Mansfield Journal (1980),64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187.
 {¶ 12} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is *Page 6 
made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46; Civ. R. 56(C).
 {¶ 13} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support its claims. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264; Civ. R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 14} A separation agreement is a contract and, as such, is subject to the same rules of construction as other contracts. Uram v. Uram
(1989), 65 Ohio App.3d 96, 99, 582 N.E.2d 1060; Forstner v. Forstner(1990), 68 Ohio App.3d 367, 372, 588 N.E.2d 285. As a contract, a separation agreement must be construed in its entirety in order to give effect to the parties' intention. Skivolocki v. East Ohio Gas Co.
(1974), 38 Ohio St.2d 244, 313 N.E.2d 374, paragraph one of the syllabus. The meaning of a written separation agreement must be ascertained from the language of that agreement and no inconsistent implications can be made. Blosser v. Enderlin (1925), 113 Ohio St. 121,148 N.E. 393, paragraph one of the syllabus. *Page 7 
 {¶ 15} Where the terms of an agreement are ambiguous, the court may consider extrinsic evidence to interpret or construe terms or to supply an omitted term. Williams v. Williams (July 12, 2001), Cuyahoga App. No. 78193; Herold v. Herold (Dec. 22, 1992), Franklin App. No. 92AP-36. The determination of whether a contract is ambiguous and therefore requires extrinsic evidence is a matter of law. Nonetheless, where the court determines that a term is ambiguous or indefinite and conflicting evidence is offered as to the intended meaning, the question of that meaning is one of fact. Amstutz v. Prudential Ins. Co. (1940),136 Ohio St. 404, 26 N.E.2d 454; Ohio Historical Society v. General Maintenance Engineering Co. (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340. Finally, a separation agreement which is ambiguous in its language must be construed against the party who prepared it. Uram at 99.
 {¶ 16} Where there is a dispute over the interpretation to be given a particular clause in a separation agreement, the trial court in enforcing the agreement has the power to hear the matter, clarify the confusion, and resolve the dispute. Neiheiser v. Neiheiser (Jan. 13, 2000), Cuyahoga App. No. 75184, citing In re Dissolution of Marriage ofSeders (1987), 42 Ohio App.3d 155, 157, 536 N.E.2d 1190. An interpretative decision by the trial court regarding an ambiguous provision in a separation agreement will not be reversed without a showing of an abuse of discretion. Dzina v. Dzina, Cuyahoga App. No. 83148, 2004-Ohio-4497, citing Yaeger v. Yaeger, Geauga App. No. 2002-G-2453, 2004-Ohio-1959. *Page 8 
 {¶ 17} Applying the foregoing principles of contract review, we now review Kimberly's assignments of error.
 Summary Judgment {¶ 18} In the first assignment of error, Kimberly argues that the trial court erred in granting summary judgment on a matter of contractual construction when the Court implied terms not specifically addressed by the express language of the contract. In the second assignment of error, Kimberly argues that the trial court erred in granting summary judgment where the clear unambiguous language of the contract mandated summary judgment in favor of Kimberly. Since both assignments of error deal with the trial court's summary judgment ruling, we will discuss them together.
 {¶ 19} In her appeal, Kimberly concentrates on two specific arguments. First, she asserts that the McHugh Agreement holds Kimberly and Jose equally liable only for claims made by McHugh against ITX, and nothing in the agreement permits Jose to benefit from any of the claims ITX had against McHugh. Kimberly argues that since she purchased ITX from Jose, any of ITX's claims against McHugh are assets of ITX and therefore belong solely to Kimberly, and Jose cannot benefit from those claims. We disagree.
 {¶ 20} The McHugh Agreement defined "McHugh dispute" to mean "all claims made by either McHugh Construction or on the [bond] or otherwise related to the McHugh construction project in Chicago, Illinois, * * *." The Agreement further *Page 9 
outlined that Jose and Kimberly would split the costs of the dispute, Kimberly would negotiate the settlement of the McHugh dispute, and each party would cooperate to limit liabilities.
 {¶ 21} Because the McHugh Agreement specifically stated "all claims made by [McHugh] * * * or otherwise related to the McHugh construction project * * *", we find that Jose and Kimberly clearly and unambiguously intended to equally be liable to McHugh and/or benefit from any and all claims ITX may have against McHugh with respect to the construction project. Moreover, we agree with the trial court in finding that ITX's claims against McHugh are related to that construction project.
 {¶ 22} Kimberly argues that if the McHugh Agreement intended for Jose to benefit from any claims ITX made against McHugh, the agreement would have specifically stated the same. We find, however, that the McHugh Agreement is clear and encompasses any type of claim between ITX and McHugh.[2] Even though every possible scenario may not be discussed in a given contract, the absence of said statements does not warrant finding the agreement to be ambiguous if the document clearly conveys the parties' intent. We find that the intent in the instant contract is clear and unambiguous. *Page 10 
 {¶ 23} Second, Kimberly argues the definition of the word "pay," as it is set forth in the McHugh Agreement, has several meanings, one with respect to her cash payments and another for ITX's contribution. She claims the word "pay" includes both her own cash payments as well as ITX's contribution on its own claim to partially extinguish the McHugh claim, or the setoff. This would in essence offset only Kimberly's obligation since she was awarded ITX in the divorce decree. Instead, we agree with the trial court that the plain meaning of the word "pay" should be utilized to include and benefit both Jose and Kimberly equally since no provision is written in the McHugh Agreement to lead the court to any other conclusion.
 {¶ 24} Again, we find that the McHugh Agreement is clear and unambiguous. ITX's claims were claims that were "otherwise related to the McHugh construction project in Chicago" because ITX's only dealing with McHugh was on that specific project. The McHugh Settlement clearly stated that ITX will pay McHugh $800,000 within thirty days of the execution of the agreement to resolve any and all disputes between the parties. No language in the McHugh Settlement or the McHugh Agreement discussed or even mentioned the terms or conditions of a setoff. Further, the McHugh Agreement clearly stated that Kimberly and Jose shall equally contribute to the amount owed to McHugh, which according to the McHugh Settlement is $800,000. Therefore, Jose's payment of $400,000 satisfied his obligations under the McHugh Agreement. *Page 11 
 {¶ 25} Finally, we find no merit in Kimberly's argument that the transmittal letter which accompanied a draft of the settlement sent from ITX's counsel to McHugh's counsel was part of the McHugh Settlement. We find that it was a mere cover letter, because it was not attached to the executed McHugh Settlement or referred to in the text of the settlement. The McHugh Settlement contained an entireties clause, which stated that the Settlement document contained all agreements between the parties. Therefore, we agree with the trial court that the letter written by Kimberly's counsel is not part of the McHugh Settlement and does not modify or amend the terms of the Settlement.
 {¶ 26} Therefore, we find that the trial court correctly granted partial summary judgment in favor of Jose. The first and second assignments of error are overruled.
 Court's Footnote {¶ 27} In the third assignment of error, Kimberly argues that the trial court erred in finding that she "failed to cooperate" by not suing a non-party where there was no evidence before the court on the issue and where the terms of the contract did not require such an action. Under this assignment of error, Kimberly argues that the trial court erred in finding that she failed to cooperate in limiting liability in the McHugh dispute because she refused to bring suit against another company involved in the subcontract on the Chicago project.
 {¶ 28} First, we note that Kimberly has failed to cite to any legal authority in support of her argument as required by App. R. 16. Thus, under App. R. 12(A)(2), this *Page 12 
court may disregard this assignment of error. That being said, we find no error. The court's finding was placed in a footnote, along with the specific statement that the court did not find the issue pertinent to summary judgment. Thus, the court did not rely on the finding when granting summary judgment. Likewise, we find the issue irrelevant to our affirming summary judgment.
 {¶ 29} Therefore, the third assignment of error is overruled.
 {¶ 30} Accordingly, judgment is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] The letter actually states $486,000, but Kimberly claims that it was a typographical error.
[2] In fact, one could argue that the opposite is also true: that if Jose was not to benefit from any claims ITX pursued against McHugh, the agreement would have specifically stated that fact. *Page 1