**WASHINGTON**

*v.*

**CENTRAL STATE UNIVERSITY.***

Court of Claims of Ohio.

No. 96–08849.

Decided April 24, 1998.

---

* Reporter's Note: No appeal has been taken from the judgment of the court.

28

*Elaine S. Bernstein,* for plaintiff.

*Betty D. Montgomery,* Attorney General, *Susan C. Walker* and *Monique Bradley,* Assistant Attorneys General, for defendant.

DEAN STRAUSBAUGH, Judge.

Plaintiff, Dr. Willie J. Washington, has filed this claim against defendant Central State University, alleging breach of contract and defamation. Defendant has denied liability. On February 2, 1998, a trial was held on the sole issue of liability.

In July 1990, plaintiff was appointed by defendant's president, Arthur Thomas, to the position of Vice President of Academic Affairs ("VPAA"). Prior to that time, plaintiff was employed by defendant as a tenured professor in the biology department. Plaintiff served as VPAA through September 18, 1995, when he was removed by the new president, Dr. Herman B. Smith, Jr. However, plaintiff retained his status as a tenured professor.

During his tenure as VPAA, plaintiff was employed under a series of written contracts. Each of these contracts was approximately one year in duration, and each contained the following language relative to termination:

"3.   * * * The Appointee shall have the right to terminate this agreement by submitting a written resignation to the President not less than thirty (30) days prior to its effective date; and the University may terminate this agreement at anytime for cause; the University may terminate this agreement prior to the expiration hereof on thirty (30) days written notice to the Appointee * * *."

On March 10, 1995, plaintiff executed his last written contract with defendant. The parties agree that this contract consists of a letter written by Dr. Smith and the prior written contract incorporated thereby. Although plaintiff's salary of $88,916 was to remain in effect for the period July 1, 1994 through June 30, 1995, the contract also contained the following additional language:

"* * * This was a difficult decision for the Administration and Board of Trustees to make. However, the University simple [*sic* ] could not commit funds which are not available. One of the adopted assumptions of the University financial plan (February 12, 1994) was, '*there will be no wage increases in two of the next three years.*'

"The current contract terms and conditions will continue. The only change in your contract of employment is the health provision of the contract addendum. Please sign the original of this letter and return to Human Resources & Organizational Development not later than March 13, 1995." (Emphasis added.)

In a letter dated September 9, 1995, President Smith informed plaintiff of his decision to remove plaintiff from his position as VPAA. Defendant's board of trustees ultimately approved that decision.

On July 30, 1996, plaintiff filed the instant action against defendant, seeking damages for breach of contract and defamation. At the close of plaintiff's case in

chief, defendant moved for dismissal of plaintiff's cause pursuant to Civ.R. 41(B)(2). The court declined to render judgment on the motion until the close of all evidence. The parties have subsequently submitted proposed findings of fact and conclusions of law.

The court will first address plaintiff's breach-of-contract claim. Plaintiff argues that the written contract of employment executed in March 1995 was still in effect at the time of his dismissal and that his termination was in violation of that contract. Defendant argues that plaintiff's written contract was for a term of only one year and that plaintiff was an employee at will at the time of his dismissal. Defendant argues, in the alternative, that even if the written contract was still in effect at the time plaintiff was terminated, his dismissal was for cause as permitted under the terms of that contract.

■■■ As a general rule, the goal of the court in construing written contracts is to arrive at the intent of the parties, which is presumed to be stated in the document itself. See *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 678 N.E.2d 519; *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 667 N.E.2d 949. Where the terms of a contract are clear and unambiguous, the court cannot find different intent from that expressed in the contract. *E.S. Preston Assoc., Inc. v. Preston* (1986), 24 Ohio St.3d 7, 24 OBR 5, 492 N.E.2d 441. However, where the terms in a contract are ambiguous, extrinsic evidence may be relied upon to determine the intent of the parties. *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.* (1989), 65 Ohio App.3d 139, 583 N.E.2d 340.

With regard to the duration of the written contract, plaintiff testified that he understood that the language contained in President Smith's letter that stated that there would be no pay increase in two of the next three years meant that the contract was to remain in effect through the 1998 academic year. Plaintiff's testimony is contradicted by each of the other written contracts executed by the parties, which were for approximately one year only.

The court finds that the language of Dr. Smith's letter is reasonably susceptible of more than one interpretation regarding the duration of plaintiff's contract. However, even if the court were to find that the written contract was in effect at the time of his termination, plaintiff must still prove that he was terminated in violation of the terms of that contract.

■■ Although plaintiff first contends that defendant breached the contract by failing to give him thirty days' notice prior to dismissal, in reviewing the language of the document, the court finds that the agreement does not require any notice to plaintiff where the termination is for cause. The language of the written agreement is clear and unambiguous in this regard.

■ Next, on the issue of plaintiff's right to a pretermination hearing, plaintiff presented the testimony of Carolyn Wright, former Director of the Department of Human Services. Although she testified that plaintiff was entitled to a pretermination hearing on the issue of cause, Wright acknowledged that her opinion was based on the language of defendant's employee handbook, which applies to classified employees only. Moreover, on cross-examination, Wright admitted that she knew of no written university policy that would require a pretermination hearing for an unclassified contract employee, that she could not remember ever being involved in a pretermination hearing for an unclassified contract employee, and that she did not recall whether any pretermination hearing was held regarding the dismissal of past president Arthur Thomas. In short, the court was not persuaded by Wright's testimony that it was defendant's "practice" to provide pretermination hearings for unclassified contract employees such as plaintiff.

■ Given the absence of any provision in plaintiff's written contract or any written university policy requiring a pretermination hearing on the issue of cause, the court concludes that defendant did not violate plaintiff's contractual rights by terminating his administrative employment without such a hearing. Similarly, plaintiff's claim for relief grounded on an alleged violation of his due process rights to a pretermination hearing is not cognizable in this court. See *Kirsch v. Bowling Green State Univ.* (May 30, 1996), Franklin App. No. 95API11–1476, unreported, 1996 WL 284717, dismissed, *sua sponte*, no substantial constitutional question and jurisdictional motion overruled in (1996), 77 Ohio St.3d 1472, 673 N.E.2d 137.

■ Plaintiff next contends that the university had no justifiable reason to terminate his contract. Plaintiff's written contract does not define the term "cause," and plaintiff did not introduce any applicable written policy statement defining "cause" for purposes of unclassified contractual employees.

In his deposition, Dr. Smith testified that plaintiff was terminated for the reasons set forth in his letter to plaintiff dated September 7, 1995, which identifies fourteen separate job-related "incidents." Smith stated that he was required to become personally involved in several issues ("incidents"), which he felt should have been handled more effectively by plaintiff. Dr. Smith did not feel that plaintiff was handling his job competently.

Plaintiff discussed each of these incidents during his testimony and stated that, in his opinion, he had performed his duties competently with respect to each and that he would or could have done nothing differently. Plaintiff did admit, however, that Dr. Smith, as president of the university, had the discretion to appoint a VPAA who could perform the duties of that position to his personal

satisfaction. He also admitted that it was not uncommon for an incoming president to make changes in the administrative staff.

The court has previously acknowledged that it may not substitute its judgment for that of the employer and may not second-guess the business judgments of employers making personnel decisions. *Watson v. Kent State Univ.* (Aug. 8, 1994), Ct. of Cl. No. 91–06627, unreported; *Dodson v. Wright State Univ.* (1997), 91 Ohio Misc.2d 57, 697 N.E.2d 287. Upon a review of the conflicting testimony on the issue of cause, the court is convinced that plaintiff's termination was the result of a difference of opinion between plaintiff and Dr. Smith as to the nature and scope of plaintiff's duties and his effectiveness as an administrator. This decision clearly involved the exercise of professional discretion on the part of Dr. Smith, and the court will not substitute its own judgment for that of the university's president. In short, the evidence in this case demonstrates that plaintiff's termination was for cause as permitted under the terms of the written agreement between the parties. Accordingly, the court finds in favor of defendant as to plaintiff's breach of contract claim.

Plaintiff's defamation claim is based primarily upon a publication made to the board of trustees by Dr. Smith entitled "Interim President's Report" and dated September 16, 1995. Therein, Dr. Smith makes the following statements:

"The most serious challenge perceived today is the inadequacy of the academic affairs program with the many ramifications deriving therefrom. It now is clear that the administrative personnel in place in March 1995 are inadequate for this job. It has taken several months to arrive at this firm judgement. Necessary remedial steps have been taken. Inadequacy in Academic Affairs administration, of course, causes, motivates, facilitates, or tolerates a whole host of other troublesome conditions among the faculty. It cannot be concluded that the faculty is the basic problem. Problems here, it would seem, are symptoms."

Although plaintiff is not named in the report, there is no dispute that Dr. Smith's statements were made about plaintiff. There is considerable dispute, however, whether the statements concerning plaintiff's job performance were true.

To establish a claim of defamation, plaintiff must prove by a preponderance of the evidence that a false publication caused injury to his reputation, or exposed him to public hatred, contempt, ridicule, shame, or disgrace, or affected him adversely in his trade or business. *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 365, 588 N.E.2d 280, 283–284.

As stated above, the evidence presented in this case convinces the court that plaintiff's termination resulted from a disagreement between plaintiff and Dr. Smith regarding the nature and scope of plaintiff's duties and his effective-

ness as an administrator. Nevertheless, even if it be concluded that Dr. Smith's statements about plaintiff's competency were false and defamatory, defendant may escape liability to plaintiff by virtue of the qualified privilege set forth in *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 138, 331 N.E.2d 713, 718, and *McKenna v. Mansfield Leland Hotel Co.* (1936), 55 Ohio App. 163, 167, 8 O.O. 463, 465, 9 N.E.2d 166, 168–169. In *McKenna*, the court stated:

"The preponderance of authority supports the view that communications between an employer and employee, or between two employees, concerning the conduct of a third employee or former employee, are qualifiedly privileged, and thus, even though such a communication contains a matter defamatory to such other or former employee, he cannot recover in the absence of sufficient proof of actual malice to overcome the privilege of the occasion." *Id.* at 167, 8 O.O. at 465, 9 N.E.2d at 169.

The court finds that the communication between Dr. Smith and the board of directors concerning plaintiff's job performance was a communication made by Smith in the interest of defendant, limited to the scope of plaintiff's duties with defendant, and that it was published on a proper occasion and in a proper manner. The alleged defamatory communication was, therefore, protected by a qualified privilege. *McKenna, supra.*

The communication at issue being privileged, plaintiff may recover damages for its publication only if actual malice is proven. In the context of the claim for defamation, the term "actual malice" has been defined as a publication made " 'with knowledge that it was false or with reckless disregard of whether it was false or not.' " *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 80, 518 N.E.2d 1177, 1180, quoting *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279–280, 84 S.Ct. 710, 725–726, 11 L.Ed.2d 686. In this case, the evidence presented by plaintiff falls well short of proving actual malice on the part of Dr. Smith. Consequently, even if the court were to conclude that Dr. Smith's statement concerning plaintiff's job performance was false and defamatory, plaintiff would not recover from defendant under the facts of this case.

Based on the foregoing, the court concludes that plaintiff failed to prove his breach-of-contract and defamation claims by a preponderance of the evidence. Defendant's Civ.R. 41(B)(2) motion is moot. Judgment is rendered in favor of defendant.

*Judgment for defendant.*

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.