## MANIS

v.

## HOXWORTH BLOOD CENTER, UNIVERSITY OF CINCINNATI MEDICAL CENTER, et al.

2002-Ohio-5496.]

Court of Claims of Ohio.

No. 2000–10278.

Decided Sept. 30, 2002.

44

Randolph J. Freking and Carol S. Wood, for plaintiff.

Betty D. Montgomery, Attorney General, and Randall W. Knutti, Assistant Attorney General, for defendants.

———————

EVERETT BURTON, Judge.

{¶ 1} Plaintiff brings this action against defendants alleging employment discrimination pursuant to R.C. 4112.02. Defendants denied liability, and the case was tried to the court.

{¶ 2} Plaintiff was born in 1938. She was employed by Hoxworth Blood Center ("Hoxworth") from 1987 until the date of her resignation in January 1999. Plaintiff subsequently elected to receive retirement benefits and has not worked since January 1999.

{¶ 3} Hoxworth is a branch of the University of Cincinnati Hospital that supplies blood to 35 area hospitals through its central office, neighborhood donor centers, and mobile units. Plaintiff was initially hired to supervise the neighborhood donor centers and later became assistant to the director of donor operations ("DDO"), Victoria Hilton. Plaintiff testified that under Hilton, her duties included designing, opening, and staffing new donor centers. Plaintiff testified that she felt "part of a team," that she loved her job, and that she enjoyed having input.

{¶ 4} When Pam Roeller later became DDO, plaintiff shared her duties with Karen Skaggs. Plaintiff, however, retained responsibility for personnel matters. Plaintiff testified that she received annual pay raises and favorable performance reviews under Hilton and Roeller.

{¶ 5} Plaintiff testified that working conditions started to deteriorate beginning with Vickie Williamson's appointment as Hoxworth's deputy director in 1997. Plaintiff had never heard any complaints about her job performance during the time that she was supervised by Hilton and Roeller. However, when Roeller left her position as DDO in 1997, Williamson promoted Mark Folino to fill that position in April 1998. Plaintiff did not apply for Roeller's position.

{¶ 6} Prior to April 1998, Folino had been serving as head nurse. As head nurse, Folino reported to plaintiff, but, as DDO, Folino became plaintiff's direct supervisor. Plaintiff testified that she did not like the new structure and did not like reporting to Folino. In May 1998, Williamson and Folino informed plaintiff of their concerns about her job performance in a written review dated May 15, 1998. Among the chief concerns listed were plaintiff's inability to limit overtime,

ineffective scheduling, failure to fill open positions for staff phlebotomists, and failure to obtain requested training.

{¶ 7} In a meeting to discuss plaintiff's performance review, plaintiff claims that Williamson yelled and screamed at her and almost came over the desk after her. Plaintiff testified that she was totally shocked by the written review and did not agree with any of it. Williamson testified that plaintiff refused to address the concerns raised in the memorandum and refused to respond to direct questions about her job performance.

{¶ 8} A subsequent review and meeting in December 1998 yielded similar results. Plaintiff claimed that the evaluations were incorrect and that Williamson and Folino became angry and abusive at a subsequent meeting called to discuss plaintiff's performance. Williamson and Folino claimed that plaintiff either failed or refused to provide any responses to the concerns raised in the written review or to offer any specifics about her plans for improvement.

{¶ 9} Eventually, Williamson gave plaintiff the option to accept a position as a staff nurse or be fired and receive six months' pay. Plaintiff was given one day to think about her options; she chose to resign and then retire.

{¶ 10} Plaintiff's primary cause of action in this case is for age discrimination under R.C. 4112.02(A), which provides:

{¶ 11} "It shall be an unlawful discriminatory practice:

{¶ 12} "(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 13} A plaintiff may establish a prima facie case of discrimination either by direct evidence or by the indirect method established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Under *McDonnell Douglas*, an inference of discriminatory intent may be made by establishing that plaintiff (1) was a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position held, and (4) that comparable, nonprotected persons were treated more favorably. See, also, *Goad v. Sterling Commerce, Inc.* (June 13, 2000), Franklin App. No. 99AP–321, 2000 WL 756386, following *McDonnell Douglas*. In the case of age discrimination, it must be shown that age was the motivating factor for the adverse employment action. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439.

{¶ 14} Once a plaintiff establishes a prima facie case, discrimination is presumed. The burden of production then shifts to the employer to come forward with evidence of a legitimate, nondiscriminatory reason for plaintiff's discharge. Id. If the employer articulates a legitimate, nondiscriminatory reason, the presumption of discrimination is rebutted; plaintiff must then present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752.

{¶ 15} In support of her claim of age discrimination, plaintiff points to statements allegedly made by Williamson and Folino as evidence of discriminatory intent. Plaintiff testified that in meetings with Williamson and Folino regarding plaintiff's job performance, both talked about plaintiff's age, used the term "old management," and raised the issue of plaintiff's retirement eligibility.

{¶ 16} Both Williamson and Folino testified that it was plaintiff who initially raised the issue of her retirement in meetings about her job performance. The court finds this testimony to be credible. Indeed, upon review of the evidence, the court finds that plaintiff initiated discussions about her retirement in an effort to avoid answering questions about her job performance—questions that she believed were unfair and unjustified.

{¶ 17} Additionally, the court finds that a serious personality conflict developed between plaintiff and both Williamson and Folino. The testimony establishes that the management style employed by Williamson was aggressive and confrontational. Folino's style was similar. Indeed, at some point during this time period, plaintiff refused to speak directly to Folino. Instead, plaintiff communicated with him only with written memoranda. Williamson eventually demanded that plaintiff stop using written memoranda. Plaintiff also testified that at other times during 1998, she felt that she was both ignored by Folino and Williamson and excluded from meetings. Plaintiff was not the only Hoxworth employee to have problems with Williamson. Indeed, Pat Roeller testified that she left her position because of poor treatment by Williamson. According to Roeller, Williamson was a dictatorial and unreasonable woman who often yelled and screamed at her. Roeller referred to Williamson as a "very evil woman."

{¶ 18} The court does not find that the other statements cited by plaintiff require the inference of age discrimination under the circumstances. When Williamson was appointed deputy director, Hoxworth was losing money and collecting an insufficient amount of blood to meet demand. Williamson was charged with the considerable task of lowering costs and increasing productivity. At the center of her plan to accomplish this task was the implementation of a more efficient method of staffing at the donor centers and filling vacant phlebotomists' positions. In the view of the court, it is more likely that the alleged

comments about "old management" referred to the style and direction of management employed in the past and not the age of those employees in management positions.

{¶ 19} The ultimate burden of plaintiff in an age-discrimination case is to prove he or she was discharged because of her age. *Kohmescher*, supra. In consideration of all of the testimony in this case, the court finds that plaintiff did not prove that her loss of status at work was a result of age discrimination or that she was compelled to retire as a result of age discrimination. Rather, the greater weight of the evidence establishes that plaintiff left her employment because of personality conflicts with Williamson and Folino and her inability or unwillingness to accept her diminished role at Hoxworth. Plaintiff was offered the option to take a position as a staff nurse or to be terminated. Plaintiff declined to accept a nursing position and resigned.

{¶ 20} As a general rule, this court will not substitute its judgment for that of the employer and will not second-guess the business judgments of employers regarding personnel decisions. See, e.g., *Watson v. Kent State Univ.* (Aug. 8, 1994), Court of Claims No. 91–06627; *Dodson v. Wright State Univ.* (1997), 91 Ohio Misc.2d 57, 697 N.E.2d 287; *Washington v. Cent. State Univ.* (1998), 92 Ohio Misc.2d 26, 699 N.E.2d 1016. Whether Williamson's style of management was effective and whether her personnel decisions were correct are not the issues before this court. The court notes, however, that Karen Skaggs was given a similar performance review to the one received by plaintiff. However, Skaggs was able to demonstrate improvement and she was retained as an assistant DDO.

{¶ 21} In this case, the court is persuaded by the evidence that defendants assessed plaintiff's ability to do the job and determined that she was no longer an effective manager. The court further finds that plaintiff's failure to meet expectations was the basis for her reduced role at Hoxworth and the decision to demote her rather than any scheme or plan to rid the institution of older employees. The obvious personality conflict between Williamson and plaintiff was also a contributing factor in plaintiff's dissatisfaction with her job and the ultimate decision to retire. Plaintiff did not produce persuasive evidence that her treatment by Williamson was related to her age.

{¶ 22} Plaintiff's sex-discrimination claim is based primarily upon the fact that Folino was able to convince Williamson to hire nurses where plaintiff and other female management staff could not. However, upon review of the evidence, it is simply not reasonable to infer that Folino received more favorable treatment because of his sex. It is clear that Williamson believed that Folino was a more effective and competent manager than his predecessors. Accordingly,

plaintiff's sex-discrimination claim is without merit. See *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 582.

{¶ 23} Finally, plaintiff alleges a claim of disability discrimination based upon her contention that she contracted encephalitis in 1995 and that, as a result of the disease, she continues to have problems speaking. However, plaintiff presented no expert testimony either to establish that she contracted the disease or that any residual disability remained. Moreover, plaintiff failed to prove that defendant was aware of any such condition or her alleged disability. Consequently, plaintiff cannot prevail upon this claim.

{¶ 24} For these reasons, plaintiff has failed to prove any of her claims by a preponderance of the evidence. Accordingly, judgment shall be rendered in favor of defendant.

Judgment for defendant.

EVERETT BURTON, J., retired, of the Scioto County Court of Common Pleas, sitting by assignment.