STACHURA et al., Appellants,

v.

TOLEDO et al., Appellees.

[Cite as *Stachura v. Toledo,* 177 Ohio App.3d 481, 2008-Ohio-3581.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1377.

Decided July 18, 2008.

482

Terry J. Lodge, for appellants.

John T. Madigan, Toledo Director of Law, Adam Loukx, General Counsel, and Keith J. Winterhalter, Senior Attorney, for appellees.

SINGER, Judge.

{¶ 1} Appellants appeal a summary judgment issued by the Lucas County Court of Common Pleas in favor of a municipal employer and individuals in a gender-discrimination claim. For the reason that follow, we reverse and remand for further proceedings.

{¶ 2} Appellants, Captain Carla Stachura, firefighter Geraldine McCalland, and firefighter Judi Imhoff, were employees [1] of appellee the city of Toledo's Department of Fire and Rescue. At the time relevant to this appeal, appellee Michael

---

1. It was subsequently alleged that appellants were terminated from their employment in retaliation for their assertion of these claims.

Bell was Chief of the department; appellees Deputy Chiefs John Coleman and Robert Metzger supervised appellants.

{¶ 3} On November 21, 2005, appellants filed a complaint, alleging that appellees engaged in a course of conduct that resulted in deleterious changes in their work conditions to which male coworkers were not exposed.

{¶ 4} Appellant Stachura alleged, and later supported with affidavits and deposition testimony, that during her initial employment as a firefighter private, she had been exposed to intense hazing at the hands of male firefighters and that her complaints to her male superiors, including appellee Coleman, were either treated perfunctorily or dealt with in a manner that resulted in her denigration before her coworkers. Additionally, appellant Stachura claimed that once she achieved rank, she was denied privileges ordinarily afforded males of similar rank and seniority. Appellant Stachura also alleged that after she was named captain of the department's Fire Prevention Bureau, appellee Coleman denied her the office space previously assigned to her male predecessors and eventually transferred her to an office several miles from those she was supposed to be supervising. Throughout, appellant Stachura alleged, she was subjected to verbal abuse by her male coworkers, and her complaints to superior officers, including appellees Coleman and Bell, were minimized or dismissed as oversensitivity.

{¶ 5} Eventually, she was relieved of supervisory responsibility for most of her subordinates by appellees Coleman and Bell and was assigned duties previously performed by a civilian secretary. The result of all this, appellant Stachura asserts, was that she was denied overtime opportunities, inhibited from career advancement, and suffered mental and emotional pain.

{¶ 6} Appellant McCalland alleged that although a 20–year veteran of the department, she was sent to retraining on a breathing apparatus on a pretext by a superior whom she claimed made statements suggesting that he harbored a disapproval of female firefighters. The same officer, appellant McCalland asserted, accused her of feigning illness and reprimanded her for that. He also accused her of violating the chain of command and for leaving a work site without authorization—allegations later prosecuted by appellee Metzger, but eventually characterized by appellee Bell as a result of a "personality conflict."

{¶ 7} Appellant McCalland also asserted that she was denied rightful appointment to the position of public-education officer in favor of a less qualified male. When she filed a grievance, appellees elected not to fill the position rather than appoint her. After filing a gender-discrimination complaint with the city, appellant McCalland received the disputed appointment.

{¶ 8} Appellant Imhoff alleged that while assigned to a fire station, she became the object of severe harassment, consisting of repeated verbal assault and sexual innuendo. When she reported this harassment to her superiors, she was rebuked by appellee Metzger for her part in precipitating trouble in the work environment. Subsequent complaints about what she perceived as demeaning and hostile statements in her presence resulted in her being accused by appellee Metzger of eavesdropping.

{¶ 9} Appellees responded to appellants' complaint, denying its allegations. In subsequent deposition testimony, appellees Bell and Coleman maintained that the department's actions that affected appellants were in response to budgetary constraints or appellees' inability to adapt to the culture of the firehouse.

{¶ 10} Following discovery, appellees moved for summary judgment, arguing with respect to appellant Stachura that she (1) was barred from introducing evidence of events occurring beyond the six-year statute of limitations, (2) could not sustain her statutory gender-discrimination claim due to a lack of proof of causation between purportedly sexist statements and her alleged mistreatment or that she was subject to adverse or disparate employment action, (3) failed on her sexual-harassment claim for want of evidence that her alleged harassment was based on, or because of, her sex and/or that the offensive conduct was not sufficiently severe, and (4) could not sustain her statutory-retaliation claim because she was engaged in no protected activity and could not prove adverse action against her.

{¶ 11} Appellees interposed similar summary-judgment motions relative to appellants McCalland and Imhoff. Appellees also argued that appellant McCalland could not establish adverse employment action or disparate treatment or that any of the alleged harassment was based on or directed at her because of sex. Neither, appellees insisted, could appellant McCalland show protected activity or adverse action on her retaliation claim.

{¶ 12} Appellees' motion with respect to appellant Imhoff duplicated the arguments put forth in the motion relative to appellant McCalland.

{¶ 13} Appellants responded with memorandums in opposition, maintaining that while the statute of limitations may bar claims outside the six-year period, the admission of evidence from such a period was proper to show a pattern of conduct and create an inference of intent. Concerning the remainder of the substantive claims, appellants insisted that there were material facts in dispute and that summary judgment should be denied.

{¶ 14} On consideration, the court granted appellees' summary-judgment motions. In its judgment entry, the court stated:

{¶ 15} "[T]he Court finds that Stachura, McCalland, and Imhoff have failed to establish that: (1) there is a causal connection between any discriminatory remarks made or allowed by any of the defendants and any adverse employment actions taken against any of the plaintiffs; (2) any of the defendants or their subordinates treated any of the plaintiffs differently than any similarly situated male employees of the Department; (3) any alleged harassment by any of the defendants or their subordinates was based on sex or directed at any of the plaintiffs because of their sex; (4) any alleged harassment of any of the plaintiffs was sufficiently severe or pervasive to affect the terms, conditions, or privileges of her employment; (6) there was a causal connection between any protected activity of any of the plaintiffs and any adverse action taken against any of them * * *."

{¶ 16} "The incidents recounted by Plaintiffs may have annoyed or offended them, and they may have perceived some or all of the incidents as gender discrimination. But there is no evidence that what happened to Plaintiffs was anything more than isolated incidents of tension or personality conflicts among co-workers or between supervisors and subordinates."

{¶ 17} The court did not reach the question of whether the statute of limitations bars antecedent evidence. The court denied as moot appellants' motion to file a supplemental claim of retaliation arising from their subsequent termination from appellee city's employ.

{¶ 18} From this judgment, appellants now bring this appeal, setting forth the following two assignments of error:

{¶ 19} "Assignment of Error No. 1: A trial court has improperly weighed the evidence on summary judgment when it renders substantive rulings on the evidence.

{¶ 20} "Assignment of Error No. 2: It is error to deny supplementation of a complaint which adds the allegation of subsequent discharge of plaintiffs as retaliation for their opposition to gender discrimination."

{¶ 21} On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated:

{¶ 22} "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day*

*Warehousing Co.* (1978), 54 Ohio St.2d 64, 67, 8 O.O.3d 73, 375 N.E.2d 46, Civ.R. 56(C).

{¶ 23} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 463 N.E.2d 1246. A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186; *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 24} R.C. 4112.02(A) provides:

{¶ 25} "It shall be an unlawful discriminatory practice:

{¶ 26} "(A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

## I. Hostile Work Environment

{¶ 27} A statutory violation of the prohibition of discrimination because of "sex" may be shown by proving either quid pro quo harassment or hostile-environment harassment. Quid pro quo harassment is that variety directly linked to the grant or denial of a tangible economic benefit. Hostile-environment harassment has the effect of creating a hostile or abusive working environment while not affecting economic benefits. *Hampel v. Food Ingredients* (2000), 89 Ohio St.3d 169, 176, 729 N.E.2d 726, paragraph one of the syllabus.

{¶ 28} "In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment

and failed to take immediate and appropriate corrective action." Id. at paragraph two of the syllabus.

{¶ 29} Harassment because of sex need not be explicitly sexual. If sufficiently patterned or pervasive, any harassment or unequal treatment of an employee that would not occur but for the sex of the employee is unlawful. Id. at 179, 729 N.E.2d 726, quoting *McKinney v. Dole* (C.A.D.C.1985), 765 F.2d 1129, 1138–1139. "[I]n order to determine whether the harassing conduct was 'severe or pervasive' enough to affect the conditions of the plaintiff's employment, the trier of fact, or the reviewing court, must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment." Id. at 181, 729 N.E.2d 726.

{¶ 30} At issue in this claim is the trial court's "find[ings]" that any alleged harassment was not because of sex or was not sufficiently severe or perverse enough to affect appellant's privileges of employment. Initially, we should note that a "finding" is "[a] decision upon a question of fact reached as the result of a judicial examination or investigation* * *. The word commonly applies to the result reached by a judge or jury." Black's Law Dictionary (6th Ed.1990) 632. A "finding" made on a material fact is thus inapposite to an award of summary judgment. Civ.R. 56(C). Summary judgment may be properly awarded only when there is no genuine issue of material fact. Id.

{¶ 31} It would appear that the trial court's employment of the word "finding" in this matter was not mere misuse. The record suggests that the court did improperly weigh the evidence.

{¶ 32} Each of the appellants has provided affidavit and deposition testimony to an extensive litany of events that, viewed as a whole and considering the totality of the circumstances, might convince a reasonable trier of fact that the behavior about which appellants complain was directed toward them because of their sex. That appellees dispute this conclusion means that a question of fact exists on this material issue.

{¶ 33} "Whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is 'quintessentially a question of fact.'" *Hawkins v. Anheuser–Busch* (6 C.A.2008), 517 F.3d 321, 333, citing *Jordon v. Cleveland* (6 C.A.2006), 464 F.3d 584, 597. Again, in affidavits and deposition testimony, appellants have presented testimony that, if believed, might convince a reasonable trier of fact that the acts of appellees affected the terms, conditions, or privileges of appellants' employment. That appellees dispute this presents a question of material fact, precluding the award of summary judgment.

## II. Disparate Treatment

{¶ 34} Disparate-treatment discrimination may be shown either by direct evidence or indirectly by the test articulated in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. The plaintiff establishes a prima facie case if he or she (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position either lost or not gained, and (4) that the position remained open or was filled by a person not of the protected class. *Crable v. Nestle USA, Inc.*, 8th Dist. No. 86746, 2006-Ohio-2887, 2006 WL 1555405, ¶ 25. Once these elements are shown, a rebuttable presumption of employer discrimination arises. Id. at ¶ 27.

{¶ 35} Appellees concede that appellant Stachura has put forth direct evidence of discriminatory intent with respect to appellee Coleman. It is undisputed that appellee Coleman made numerous statements that could be reasonably construed as disparaging of women in general and appellant Stachura in specific.

{¶ 36} Nevertheless, appellees insist, the trial court was correct when it found that there was no causal connection between those remarks and any adverse employment action.

{¶ 37} As the nonmoving parties, appellants are entitled to have the evidence construed most strongly in their favor, including any reasonable inferences that may be drawn. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 424 N.E.2d 311. There is certainly a question of fact as to whether the statements made by appellee Coleman, and arguably ratified by appellee Bell, evidence an improper managerial motive. It would not be unreasonable to infer that this motive manifested itself in the treatment of which appellants complain. It is also a question of fact as to whether that treatment was disparate from that received by male firefighters. Consequently, summary judgment was inappropriate on appellants' disparate-treatment claim.

{¶ 38} Accordingly, appellants' first assignment of error is well taken.

## III. Retaliation Claim

{¶ 39} Appellees note that appellants do not expressly address their retaliation claim in their principal brief. Nonetheless, appellees argue that the trial court properly concluded that appellants failed to prove any causal connection between any protected activity and any adverse action taken against them.

{¶ 40} In their reply brief, appellants explain that the retaliation claim relates to the trial court's decision to deny appellants' motion to supplement their complaint with a claim that they were terminated from employment because of activities they engaged in while pursuing this lawsuit.

{¶ 41} The trial court found appellants' supplemental complaint moot because it was dismissing the rest of the suit. On remand, the court will have the opportunity to revisit that decision. Accordingly, appellants' second assignment of error is moot.

{¶ 42} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to that court for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment reversed
and cause remanded.

HANDWORK and OSOWIK, JJ., concur.