[Cite as *Knepper v. Ohio State Univ.*, 2010-Ohio-5914.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BENJAMIN KNEPPER

      Plaintiff

      v.

THE OHIO STATE UNIVERSITY

      Defendant
      Case No. 2007-01851

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} Plaintiff brought this action against defendant, The Ohio State University (OSU), alleging that OSU violated R.C. 4112.02 when it refused to hire him as an Assistant Exhibition Designer at the Wexner Center for the Arts (Wexner Center) on the basis of his age. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff, a male over the age of 50, testified that he was employed by defendant from July 1980 through October 2004 as an exhibition designer, also known as a preparator. On April 15, 2004, Gretchen Metzelaars, Director of Administration, notified plaintiff that his position was being abolished effective October 17, 2004, because of renovations to the Wexner Center. After inquiring into the reasons for his termination, Metzelaars responded by letter that "[s]hould Mr. Knepper still be interested in the preparatory position at that time the position is posted, we would welcome his application for that job or for any positions that may open in the Wexner Center for the Arts that match his qualifications." (Plaintiff's Exhibit 3.)

{¶ 3} On October 21 and November 1, 2005, OSU posted job openings for two assistant exhibition designers. Plaintiff, then 53 years old, was interviewed for both positions on November 17, 2005. The interview panel consisted of Jill Davis, Exhibitions Manager; Peg Fochtman, Human Resources Manager; and Larry Heller, Chief Exhibition Designer. The panel also interviewed two other individuals, William Fugman and Patrick Weber, both of whom had previously worked as temporary exhibition designers at the Wexner Center. Plaintiff was subsequently notified that he had not been selected for either position.

{¶ 4} R.C. 4112.02 states: "It shall be unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment or any matter directly or indirectly related to employment."

{¶ 5} In addition to Ohio case law, Ohio courts have consistently looked to federal cases interpreting federal civil rights and age discrimination legislation. See *Mauzy v. Kelly Services., Inc.*, 75 Ohio St.3d 578, 582, 1996-Ohio-265; *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 147. Under both federal and Ohio law, "[w]hen a plaintiff alleges disparate treatment discrimination, liability depends on whether the protected trait, i.e., age, actually motivated the employer's decision; that is the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Frick v. Potash Corp. of Saskatchewan Inc.*, Allen App. No. 1-09-59, 2010-Ohio-4292, ¶17, citing *Reeves v. Sanderson Plumbing Products, Inc.* (2000), 530 U.S. 133, 141.

{¶ 6} Plaintiff did not present any direct evidence of age discrimination in this case. Davis and Fochtman testified that age was not a factor either in the application process or in their decision not to hire plaintiff. (Plaintiff's Exhibits 19-20.) Absent direct evidence of discriminatory intent, Ohio courts resolve claims of disparate treatment age discrimination using the evidentiary framework established by the Supreme Court of the United States in *McDonnell Douglass Corp. v. Green* (1973), 411 U.S. 792. See *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 252-253; *Frick*, supra.

{¶ 7} The initial burden is upon plaintiff to demonstrate by a preponderance of evidence that he "(1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position either lost or not gained, and (4) that the position remained open or was filled by a person not of the protected class." *Stachura v. Toledo*, 177 Ohio App.3d 481, 2008-Ohio-3581, ¶34, citing *Crable v. Nestle USA, Inc.*, Lucas App. No. 86746, 2006-Ohio-2887.

{¶ 8} It is not disputed that plaintiff is a member of a protected class; that defendant did not hire him; and that the positions for which plaintiff applied were filled by persons not of the protected class. Both Davis and Sherri Geldin, Director of the Wexner Center, acknowledged that plaintiff was qualified for the positions. Geldin testified that any qualified applicant, including plaintiff, was welcome to submit an application for the positions. Additionally, Metzelaars, who is no longer employed by OSU, testified in her deposition that plaintiff was qualified for the position based upon his previous experience. (Joint Exhibit A at 30.) Heller believed that plaintiff was not only qualified for the positions but also that he was the best applicant for the positions. Accordingly, plaintiff has established a prima facie case of age discrimination.

{¶ 9} Once a plaintiff establishes a prima facie case, a presumption of age discrimination is created. The burden of production then shifts to the defendant-employer to overcome the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its actions. See *Allen v. Totes/Isotoner Corp.*, 123 Ohio St.3d 216, 2009-Ohio-4231, ¶4. "If the employer articulates a nondiscriminatory reason, then the employer has successfully rebutted the presumption of discrimination that was raised by the prima facie case." *Frick*, supra at 20, citing *Weiper v. W.A. Hill & Associates* (1995), 104 Ohio App.3d 250, 263.

{¶ 10} According to Davis and Fochtman, plaintiff was not hired because he lacked both the necessary computer skills and experience in managing complex projects. Fochtman explained that computer skills were "essential for this position." (Plaintiff's Exhibit 18.) Davis opined that for one to have "demonstrated experience in managing complex projects" necessarily requires an understanding of 3-D imaging software, one of the skills she was seeking in a successful candidate. Heller agreed that computer skills would be "essential" for some jobs. Davis also testified that she

made the ultimate decision not to hire plaintiff based upon the other candidates' demonstrated enthusiasm for the Wexner Center; the stated reasons why each of the candidates wanted to work at the Wexner Center; and her judgment that the other candidates were more open to learning new software, to working with the team, and to exploring new methods. Based upon the evidence submitted, the court finds that plaintiff's interviewers articulated legitimate, nondiscriminatory reasons for not hiring plaintiff.

{¶ 11} Once defendant has articulated legitimate, nondiscriminatory reasons for its actions, "[t]he plaintiff must then present evidence that the employer's proffered reason was a mere pretext for discrimination." *Frick*, supra, at ¶21 citing *Manofsky v. Goodyear Tire and Rubber Co.* (1990), 69 Ohio App.3d 663, 668. To do so, plaintiff must demonstrate either: "'(1) that the proffered reason has no basis in fact, (2) that the proffered reason did not actually motivate the [refusal to hire], or (3) that the proffered reason was insufficient to motivate the [refusal to hire].'" *Owens v. Boulevard Motel Corp.* (Nov. 5, 1998), Franklin App. No. 97APE12-1728, quoting *Frantz v. Beechmont Pet Hosp.* (1996), 117 Ohio App.3d 351, 359.

{¶ 12} As a general rule, this court will not substitute its judgment for that of the employer and will not second-guess the business judgments of employers regarding personnel decisions. See, e.g., *Watson v. Kent State University*. (Aug. 8, 1994), Ct. of Cl. No. 91-06627; *Dodson v. Wright State University* (1997), 91 Ohio Misc.2d 57; *Washington v. Central State University* (1998), 92 Ohio Misc.2d 26. Whether the best-qualified applicant was selected and whether the personnel decisions were correct are not the issues before this court. The court is, however, asked to determine whether age was a factor in the decision not to hire plaintiff.

{¶ 13} Plaintiff testified that he had been employed as a preparator at OSU from 1980 to 2004, when his job was abolished as a result of renovations to the Wexner Center. Prior to working for OSU, plaintiff obtained both a bachelor's and master's degree in fine arts from OSU. It is not disputed that during plaintiff's tenure at OSU, he participated in the installation of, and was the lead designer for, many exhibitions at the Wexner Center. His participation included handling artwork, installation of various exhibits, carpentry, and construction. Plaintiff maintained that he had experience

managing complex installation projects and that he traveled both to view exhibits that would be coming to the Wexner Center and to assist in the installation of projects around the country. Plaintiff had even installed artwork at Geldin's home and the homes of former university presidents. Plaintiff insisted that he had also been trained to use various computer software programs and model-building programs.

{¶ 14} In his tenure with OSU, plaintiff received periodic merit raises based upon recommendations by the department head and he was consistently rated "above" to "well above" average, the highest possible rating, on his performance evaluations. (Plaintiff's Exhibits 21 and 33.)[1] Plaintiff's July 2000-June 2001 performance evaluation states, "[plaintiff] has a full understanding of his job and it's challenges. * * * He is a strong carpenter with complete knowledge of construction techniques. Ben can conceptualize plans and bring his knowledge to bear whenever problem solving is required. * * * I rely on him to be the rock on which we build our team." (Plaintiff's Exhibit 21.) Additionally, plaintiff received many letters of commendation from various artists and Wexner Center officials including Geldin. Fochtman however, did not consider plaintiff's past performance in a different position to be particularly relevant to his selection for the position of assistant exhibition designer.

{¶ 15} In 1993, Geldin joined the Wexner Center as the new director. Geldin testified that she wanted to build the program and staff to match the Museum of Contemporary Art (MCA) in Los Angeles, where she had previously been employed. In her capacity as the Wexner Center Director, Geldin recruited new employees and even created a new position, an exhibitions manager, similar to one at the MCA. The duties of the exhibitions manger, Jill Davis, included negotiating contracts, developing budgets, overseeing the registrar and head preparator and developing relationships with other artists and institutions.[2] Geldin explained that a preparator's (or exhibition designer's) main duties included working with a designer, visualizing how exhibitions would be placed, installation of the exhibit and various construction and carpentry duties.

---

[1]Only one of plaintiff's annual performance reviews, for the period of July 2000-June 2001, was offered into evidence; however, defendant stipulated to the fact that the subsequent three years of performance reviews, up to the time when plaintiff's job was abolished, were indicative of his performance during the review period of July 2000-June 2001.

[2]Geldin testified that Davis' job title and functions have evolved and grown overtime commensurate with her experience and mastery of her job qualifications.

{¶ 16} Geldin testified that she was also quite involved with the renovation of the Wexner Center and that the renovation, which was begun in 2002, was needed to attract more prestigious and influential artists. Although she had anticipated that the renovation would require only one year, it lasted three years. According to Geldin, the renovation process was incredibly complicated and that dissatisfaction among Wexner Center leadership with the quality of the work being done, resulted in a decision to begin "afresh" with a new design team. It was during this time period that plaintiff was informed that his job was being abolished.

{¶ 17} On October 21 and November 1, 2005, two positions were posted for an "assistant exhibition designer." (Plaintiff's Exhibits 6 and 7.) Fochtman testified that she entered the information into the categories entitled "required qualifications" and "desired qualifications" using language from previous position descriptions in order to generate the postings for the assistant exhibition designer positions. Plaintiff applied for both of the positions by submitting a cover letter, resume, and employment application. William Fugman and Patrick Weber also applied for the two positions. The posted qualifications were substantially similar and called for a "bachelor's degree in fine art or an equivalent combination of education and experience. Extensive experience handling artwork in a museum or contemporary art setting required; demonstrated experience in managing complex projects required; carpentry and construction skills required." The job postings also asked for an "[i]n-depth knowledge of contemporary art," but did not explicitly list computer skills as a required qualification. (Plaintiff's Exhibits 6 and 7.) Despite becoming aware that the posting should have explicitly included computer skills as a requirement of the position, Fochtman testified that she never amended the job postings to include computer skills nor did Davis instruct Fochtman to amend the job postings.

{¶ 18} Davis testified that the job postings were not comprehensive and that, at some point after they had been posted, she became aware that computer skills and 3-D model-building skills had been mistakenly omitted from the description although she did not attempt to correct the omission. She also testified that even though computer skills and 3-D model- building skills were not explicitly listed in the job postings, they were essential in moving the department forward. Davis reiterated that she expected that a candidate who had managed complex projects would necessarily possess an

understanding of 3-D imaging software. Additionally, Heller testified that computer skills would be "essential" for some jobs and that the October 21 and November 1 job postings were "pretty standard."

{¶ 19} According to the candidates' applications, Weber had a master's degree in fine arts and had been employed as a temporary exhibitions designer at the Wexner Center from June 2005 to November 2005. (Plaintiff's Exhibit 14.) Fugman had a bachelor's degree in media studies and had been employed at the Wexner Center as a temporary exhibitions preparator since July 2005. (Plaintiff's Exhibit 11.) Each application form contained a list of supplemental questions. Plaintiff and Fugman answered all of the questions; however, Weber's application did not include the supplemental questions. (Plaintiff's Exhibits 8, 11, and 14.) Neither Davis nor Fochtman could explain the absence of such questions from Weber's application.

{¶ 20} Ultimately, Davis selected Weber, Fugman, and plaintiff for interviews, which were conducted on November 17, 2005. Davis also selected the interview panel which, in addition to herself, consisted of Fochtman and Heller. Plaintiff testified that he knew all three of the interviewers and had worked closely with Heller as a preparator.

{¶ 21} Davis testified that the decision not to hire plaintiff was based on the interview, her experience with all three candidates, and each candidate's relevant experience. Fochtman testified that she based her recommendation solely upon the interviews. Neither Davis nor Fochtman considered plaintiff's prior evaluations nor did they contact any of plaintiff's listed references. Davis testified that she asked the questions in plaintiff's interview while Fochtman and Heller took notes.

{¶ 22} During each of the interviews, a question was posed regarding the candidate's computer skills. The two-part question required that the candidates talk about their "model building and computer experience." (Plaintiff's Exhibits 39-40.) Plaintiff did not respond with information about his computer experience and Davis did not ask any follow-up questions regarding specific computer skills or specific software programs. Davis testified that when plaintiff was given an opportunity to ask questions about the job, he did not ask any questions.

{¶ 23} Plaintiff testified that he had not anticipated the question regarding computer skills; however, when given an opportunity to ask questions during the

interview, plaintiff declined to inquire of the reasons for such an inquiry. According to the panel's notes from the interviews, Weber and Fugman each responded to the inquiry regarding computer skills. (Plaintiff's Exhibits 39-41.)

{¶ 24} Heller testified that he was aware of plaintiff's computer training and computer skills and had even participated in training sessions through the Wexner Center with plaintiff; however, at no time did he inform Davis that plaintiff possessed such skills. Indeed, Heller testified that he was never asked his opinion regarding which candidates to hire. Even assuming that plaintiff did possess the necessary computer skills, neither plaintiff nor Heller communicated this information to Davis or Fochtman. When directly asked to describe his computer experience in the interview, plaintiff failed to mention any computer training or skills that he had acquired which would qualify him for the assistant exhibitions designer position. (Plaintiff's Exhibit 39.)

{¶ 25} Davis testified that after the interviews, she met with Heller and Fochtman to discuss the candidates. Davis thought that the panel had agreed that Weber and Fugman were the better applicants for the positions. She testified that it was an open forum discussion and both Fochtman and Heller were free to offer their input. Heller asserted that he was never asked for his opinion regarding the three applicants and that he felt that plaintiff was the best qualified candidate; however, Heller never informed Davis of his opinion regarding the candidates even though he was present at the meeting to discuss the candidates with Fochtman and Davis.

{¶ 26} Davis testified that she made the decision to hire Fugman and Weber after the meeting, and that she was happy that the panel was "in sync" with the decision. Davis opined that plaintiff lacked communication skills and that he was not a team player, although Heller disagrees. Davis based her opinion of plaintiff more on her recollection of plaintiff during weekly staff meetings and her past observations of plaintiff in the galleries, rather than on plaintiff's performance evaluations.

{¶ 27} Plaintiff testified that, shortly after he had been informed that he was not selected for one of the two positions, he sent an e-mail to Davis, Fochtman, and Heller requesting an explanation why he was not selected. Fochtman responded by e-mail stating that the interview panel was "looking for someone who had experience managing complex projects" and plaintiff's answers "revolved around the same project

each time." (Plaintiff's Exhibit 18.) Fochtman also noted that plaintiff did not mention any computer skills during the interview; skills she stated that the panel felt were "essential for this position." (Plaintiff's Exhibit 18.) The other members of the panel did not respond to plaintiff's e-mail.

{¶ 28} Based upon the testimony of the OSU employees involved in the hiring decision, the court is persuaded that the decision not to hire plaintiff was based upon legitimate, nondiscriminatory reasons. As stated above, whether or not the court believes that the best-qualified applicant was selected, the court cannot substitute its judgment for that of OSU or otherwise second-guess OSU's business judgments regarding personnel decisions. See *Watson,* supra; *Dodson,* supra*;* and *Washington,* supra*.*

{¶ 29} Plaintiff argues that defendant's stated reasons for refusing to hire him are a pretext inasmuch as OSU's own documents suggest that the decision to hire Weber and Fugman was made before the interviews for the positions were conducted. Davis testified that the two documents referenced by plaintiff were OSU position descriptions generated by Helen Molesworth, Geldin, Fochtman, and possibly Jack Jackson, deputy director.[3] Davis testified that position description documents are generated when OSU approves a position to be posted and that they are used during the hiring process. Both position descriptions listed a "Job code/Classification" of "Assistant Exhibition Designer," a position status marked "Approved" as well as a "Target/Hiring Range" and a corresponding salary. (Plaintiff's Exhibits 9 and 12.) Fugman's position description listed an "Effective Date: 09/09/2005." (Plaintiff's Exhibit 9.) Weber's position description listed an "Effective Date: 11/01/2005." (Plaintiff's Exhibit 12.) Although the documents contained a signature line, neither of the position descriptions were signed. (Plaintiff's Exhibits 9 and 12.)

{¶ 30} Plaintiff asks the court to infer from the "Effective Date" information on the two documents that both Fugman and Weber were hired as assistant exhibition designers prior to their respective interviews on November 17, 2005. Plaintiff further contends that if the candidates were hired prior to their respective interviews, and prior

---

[3]Neither Helen Molesworth nor Jack Jackson testified at trial.

to his own interview, then the testimony of defendant's employees regarding the reason for the hiring decisions must be both false and pretextual.

{¶ 31} Davis, however, testified that although she had seen position descriptions of this kind in the past, she had not seen those specific documents which had not been generated by her office. She further testified that the decision to hire Fugman and Weber was not made until after their interviews even though the documents suggest otherwise. Fochtman was not asked about the position description.

{¶ 32} Plaintiff has failed to persuade the court by a preponderance of evidence that the two position descriptions establish either that Fugman and Weber were hired prior to their interviews or that the stated reasons for hiring them, and not plaintiff, were pretextual. The documents permit competing inferences and without other corroborative evidence, the court cannot conclude that the documents establish a discriminatory animus on the part of defendant.

{¶ 33} Upon review, the court finds that the totality of the evidence demonstrates that defendant's proffered reasons were based in fact, that they were not a pretext, and that they were sufficient to justify the decision not to hire plaintiff. In the final analysis, plaintiff failed to prove by a preponderance of the evidence that he was discriminated against on the basis of his age, that he was treated less favorably as a result of his age, or that the decision not to hire him was motivated by his age. Defendant has provided ample evidence to demonstrate that there was no age bias involved in the decision not to hire plaintiff. Accordingly, judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BENJAMIN KNEPPER

Plaintiff

v.

THE OHIO STATE UNIVERSITY

    Defendant
    Case No. 2007-01851

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

    This case was tried to the court on the issue of liability.  The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant.  Court costs are assessed against plaintiff.  The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

 

_____
CLARK B. WEAVER SR.
Judge

cc:

Amy S. Brown
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Merl H. Wayman
Spencer M. Youell
425 Metro Place North, Suite 420
Dublin, Ohio 43017

GWP/cmd
Filed November 17, 2010
To S.C. reporter December 1, 2010